8 P.(2d) 100

SEABERG v. RATON PUBLIC SERVICE CO.
No. 3743.

Supreme Court of New Mexico.
Feb. 3, 1932.

Hugo Seaberg and Fred H. Taylor, both of Raton, for petitioner.

Campton & Darden, of Raton, for defendant.

WATSON, J.

Complaining before the State Corporation Commission, Hugo Seaberg alleged that the Raton Public Service Company is engaged in and enjoys a monopoly of furnishing electricity to the people of Raton, and that he consumes large amounts of that product in operating his hotel; that for many years he had paid the company monthly for all uses a rate of 5 cents up to 1,500 kilowat hours, and of 4 cents for the excess, less 10 per cent. discount, which he alleged was arbitrarily fixed to equalize his rate with reduced rates given to others; that in 1929 a new schedule was established with rates classified according to use, whether for light, heat, or power; that the new rates were of substantial benefit to all consumers except him; that his buildings are so constructed and wired that it is impossible for him to segregate the current according to its use; that all current used by him passes through the same meter, and that the company requires him to pay the highest rate therefor, while in fact about one-

half is actually used for purposes for which lower rates are specified; that the result of the present schedule of rates is greatly to increase his expense, while greatly reducing that of other consumers; that the long-established rate upon which he had relied in wiring some of his buildings and in constructing and wiring others amounts to a contract to which the defendant should be held; that, under threat of discontinuance of service, he has been compelled to pay, and has paid under protest, more than $2,000 in excess of what he would have paid under the rate formerly enjoyed. He prays that the commission direct the defendant to refund to him this excess and to re-establish for him the former rate, and for such other relief as may be just and proper.

Upon this and other pleadings a hearing was had, resulting in an order dismissing the proceeding. Petitioner then obtained an order of removal to this court. The matter is now before us on motion to dismiss.

The jurisdiction, both of the commission and of this court, is attacked on several grounds, which we find it unnecessary to consider. Petitioner takes the position that the Constitution has placed such businesses as defendant's within the regulatory jurisdiction of the Corporation Commission under the designation "transmission companies." This position defendant challenges. Since it is unnecessary to decide the question, we leave it entirely open. For present purposes we assume that defendant is subject to regulation, and pass to that ground of the motion which we find sufficient to dispose of

this case, viz., that the order was not removable.

This contention is, in brief, that, the order being negative, all relief having been denied, it was futile to remove it, since we can only enforce it or refuse to enforce it, and, whether we do the one or the other, the result will be the same.

The order deals with two distinct matters; the reasonableness of defendant's rate schedule, and the claimed discrimination against petitioner. Both aspects of the case must be considered. The ruling as to the reasonableness of the rate schedule is easily understood. Just how the commission viewed the discrimination claim we do not know. There is matter in the record to suggest that the commission deemed itself without jurisdiction over a grievance individual to petitioner, and not affecting the public. There is also matter to suggest that the commission, having considered petitioner's claim, determined that the higher rates to which he had been subjected were not a legitimate grievance against the defendant, since they did not result from unreasonable rates or unequal treatment, but from his own peculiar circumstances and situation.

On its face the complaint appears to have for its purpose the specific performance of a contract, and the recovery of moneys exacted in breach of contract. Obviously the case, as stated, was one for the courts and not for the commission. Petitioner himself recognized this to an extent. Yielding to the authority of *Santa Fé Gold & Copper Co. v.*

A., T. & S. F. Ry. Co., 21 N. M. 496, 155 P. 1093, he dismissed his claim for reparation. This left only a claim for specific performance of contract, or, at the most, a grievance based upon individual discrimination. Commissioner Baca, who took the testimony, having expressed doubt of the commission's jurisdiction over such a claim, petitioner agreed to broaden the scope of the inquiry to include the public interest.

Petitioner's contentions as to the removability of the order are, first: That the right of review by a higher tribunal is one which, in fairness, must be reciprocal; if extended to one party, it should be available to the other; and, second, that New Mexico Const. art. 11, § 7, whence the right is derived, extends it to "any party to such hearing." The particular provision invoked reads: "Any party to such hearing before the commission, shall have the same right to remove the order entered therein to the supreme court of the state, as given under the provisions hereof to the company or corporation against which such order is directed." N. M. Const. art. 11, § 7.

This brings us again to the consideration of a troublesome bit of Constitution making. The pioneer work has been done, however, and we need only apply principles already established.

The proceeding of removal is not for the review of judicial action by the commission. It is to test the reasonableness and lawfulness of its orders. The function of the commission is legislative; that of the court,

judicial. The commission is not given power to enforce any order; it being merely a rate-making or rule-making body, doing what, if there were no commission, the Legislature alone could do. The court, on the other hand, can make no rate or rule, since it lacks the legislative power.

So this court pronounced in Seward v. D. & R. G. R. Co., 17 N. M. 557, 131 P. 980, 46 L. R. A. (N. S.) 242, and on these principles it has since stood. They are fatal to petitioner's position here.

As regards the reasonableness of the rates, the commission, the only tribunal to which the public can resort to obtain reasonable rates, has spoken. It has said that the public has no just cause of complaint. This court can no more review that decision than if it had been made by the Legislature.

The situation in which petitioner finds himself is either the necessary incident or result of the system of rates and charges, bearing upon all customers similarly situated, or it is a discrimination individual to him, and not the necessary result of such rate structure. Viewing the matter in the first light, the question would be whether such system is reasonable, or whether the public interest demands one flexible enough to avoid collecting the light rate for current actually used for heat and power. This comes within the commission's decision that the rates are reasonable, and, for the reasons above stated, it is not reviewable. This we judge to have been the view of the commission.

██ Taking the other view of the matter, which seems to be that of petitioner, we think he has mistaken his remedy. The individual's right not to be discriminated against is quite different from the public's right to be protected against exorbitant rates. The former is a legal right long recognized; the latter, a political right. There was no need to create a Corporation Commission to redress wrongs for which the courts already afforded a remedy more adequate and complete than could be expected from any commission such as the Constitution created. There is nothing in the Constitution which, by express language or necessary inference, confers such jurisdiction on the commission. Such jurisdiction would not benefit the citizen. It would impose hardship. If petitioner's theory is correct, he first applies to the commission at the capitol for a declaration of his grievance. The commission cannot enforce its orders, and the defendant may ignore them. So he must remove the matter to this court for an effective decision that the discrimination is to be abated. Then he must resort to the court of original jurisdiction to obtain reparation. All this, to obtain relief which, before there was any Corporation Commission, he could have obtained in one action in a court sitting in his own city, and which relief is still, we think, available in a proper case. Finally, when petitioner's legal right, if he has one, shall have been submitted to the proper court, there will be no difficulty as to the reciprocal character of the right to a review.

In what we have last said we have gone beyond defendant's contention that the order is in its nature irremovable. This lack of jurisdiction over petitioner's individual grievance is not one of the grounds of the motion to dismiss. Yet we cannot escape it. Considering the case as involving the public interest, defendant's point is well taken; attempting to consider it as involving a private interest, we cannot fail to recognize the lack of jurisdiction.

██ We do not overlook the strength lent to petitioner's position by the constitutional provision he invokes. The right of removal is clearly given to "any party" to a hearing. That right will be invoked by a complaining party only in case of a decision in some respect adverse to him. If adverse decisions cannot be removed, there is little value in the right.

Yet, if this court is to review the commission's rule making or rate making, except as to the lawfulness or reasonableness of the rules or rates imposed, we ourselves assume legislative powers which, as held in the Seward Case, it was not the intention to confer.

We shall not go so far as to say that experience may not disclose some useful purpose for the provision in question. But, if it does not, this is not the only provision raising doubt as to just what sort of a Corporation Commission was contemplated and just what this court was expected to do on removal of its orders. In the Seward Case, other provisions were pointed to as supporting the view that, when this court obtained

jurisdiction on removal, it had the same questions before it as the commission had, and possessed the same regulatory powers.

This particular provision does not seem to have entered into the discussion in the Seward Case. Petitioner points out, however, that in New Mexico Wool Growers' Association v. A., T. & S. F. Ry. Co., 20 N. M. 33, 145 P. 1077, we did review an order of the commission refusing to require a carrier to install hoof stock scales. No one there raised the present question. The carrier, in fact, filed no brief, and seems to have been content to rest the case on the correctness of the commission's decision on the merits. On that ground the court "approved" the order. To have said that the order should be "enforced" would have been an oddity. The case is of no value, since the contingency of a disapproval of the order, with the resulting question of the relief to be afforded, seems not to have been considered.

· Granted the force of the provision invoked as pointing to a different scheme of regulation, granted that, if invoked in the Seward Case, it might have turned the scales, it can have no such weight now. Even if we were inclined, as we are not, to question the correctness and wisdom of the original interpretation, holding us in the judicial path, and out of the legislative, every consideration of policy would urge against it.

We conclude that as the matter now stands we cannot review the order or afford redress. The removal proceeding will therefore be dismissed and the matter and record remanded to the Corporation Commission, without prejudice to any further or other proceedings. It is so ordered.

BICKLEY, C. J., and PARKER and SADLER, JJ., concur.

HUDSPETH, J., did not participate.