312 P.2d 1061

GARRETT FREIGHT LINES, Inc., a Corporation, and San Juan Basin Lines, Inc., a Corporation, Plaintiffs and Appellants,

v.

STATE CORPORATION COMMISSION OF NEW MEXICO, John Block, Jr., Ingram B. Pickett, and James F. Lamb, Members of said Commission and Navajo Freight Lines, Inc., a Corporation, Defendants and Appellees.

No. 6183.

Supreme Court of New Mexico.

July 1, 1957.

Maurice H. Greene, Boise, Idaho, Donovan N. Hoover, Jason W. Kellahin, Robert E. Fox, Santa Fe, for appellants.

Fred M. Standley, Atty. Gen., for State Corporation Commission.

O. Russell Jones, Jack Smith, Santa Fe, for Navajo Freight Lines.

LUJAN, Chief Justice.

This cause of action was instituted by Garrett Freight Lines, Inc., and San Juan Basin Lines, Inc., plaintiffs-appellants, against the State Corporation Commission and the individual members thereof, and Navajo Freight Lines, Inc., defendants-appellees, under the provisions of Section 64–27–68 et seq., 1953 Compilation, to vacate and set aside the order entered by the Corporation Commission on August 18, 1955, in the matter carried under No. 3231 on its docket, and to enjoin defendants from enforcing said order or permitting any operations thereunder. Upon the conclusion of the trial the district court made and entered its judgment dismissing plaintiffs-appellants' complaint and they prosecute this appeal. For the sake of brevity we will hereinafter refer to the plaintiffs-appellants as "Garrett" and "San Juan"

and to the defendants-appellees as the "Commission" and "Navajo".

On March 21, 1955, Navajo filed an application with the Commission for authority to operate a freight service by motor vehicle for hire, for transportation of general commodities, excepting petroleum and petroleum products in bulk, oil-field equipment and supplies, commodities in bulk, and livestock between Gallup and Shiprock, New Mexico, serving all intermediate points, via U. S. Highway No. 666, over regular routes, under scheduled service. Such authority was sought as an extension to certificate of public convenience and necessity No. 55–C held by Navajo.

Pursuant to said application, and after due notice was given, a hearing was had thereon before the Commission.

Navajo introduced evidence by the testimony of several witnesses evidencing the need for the service to be supplied by it and for the granting of an extension to the certificate held by it.

The appellant, Garrett, also operating common motor carrier intrastate freight line between Gallup and Shiprock under a certificate of public convenience and necessity, was represented at said hearing by its own counsel, protesting the granting of an extension of certificate of convenience and necessity to the applicant, Navajo, and offered the testimony of Mr. Ray Hen-

dricks, its vice-president in charge of traffic, sales, solicitation and claims, but offered no testimony by the shipping public.

The appellant, San Juan, also operating a common motor carrier interstate freight line between Albuquerque and Farmington using U. S. Highway 85 to Bernalillo, State Highway 44 to Aztec and U. S. Highway 550 to Farmington, under a certificate of public convenience and necessity, with authority to service over irregular routes under non-scheduled service within a radius of twenty-five miles of State Highway 44 north of Cuba. Shiprock is approximately forty-five miles from said highway and not within the provisions of above authority. It was also represented at said hearing by its own counsel, likewise protesting the granting of the extension to the certificate held by Navajo, and offered the testimony of Mr. Richard B. Smith, its president and general manager, but offered no testimony by the shipping public.

Thereafter the commission entered its order which provides as follows:

"In the matter of the application of Navajo Freight Lines, Inc., 381 South Broadway, Denver, Colorado for an extension to Certificate of Public Convenience and Necessity No. 55–C

"Order

"Now on this 6th day of June, 1955, this matter comes duly and regularly on for hearing. The petitioner appears by its Gen. Traffic Mgr., Roy B. Adams, and O. Russell Jones, Attorney and other appearances as follows: San Juan Basin Lines, Inc., Protestant by Donovon N. Hoover, Attorney. Garrett Freight Lines, Inc., Protestant by Maurice H. Greene, Attorney and this Commission, after listening to the evidence and arguments of all parties concerned, and being duly advised in the premises, Find as follows:

"1. That due, adequate and timely notice having been given of the nature of this application, its time and place of hearing as prescribed by law and the Rules and Regulations of the Commission; the Commission has jurisdiction over this cause and the subject matter hereof.

"2. That applicant appeared by its General Traffic Manager, Roy B. Adams, and Attorney O. Russell Jones.

"3. That protestant San Juan Basin Lines, Inc. appeared by its president, Richard B. Smith, and Attorney Donovan N. Hoover, and protestant Garrett Freight Lines, Inc. appeared by its vice president, Ray Hendricks and Attorney Maurice H. Greene.

"4. That applicant maintains a terminal with docking facilities at Gallup, New Mexico.

"5. That the Bureau of Indian Affairs for the year ending February 28, 1955 moved approximately 5,066,000 pounds of freight from the Gamerco supply depot to Shiprock (Gamerco being located north of Gallup on U. S. Highway 666), most of which was moved in trucks owned by the Bureau of Indian Affairs; that equipment belonging to the Bureau of Indian Affairs was used for the reason that the Bureau of Indian Affairs and General Service Administration could not obtain an adequate and satisfactory service by common carrier; and that upon the granting of this application, the Bureau of Indian Affairs will turn such traffic to the applicant and will utilize its own equipment elsewhere on the Navajo Reservation.

"6. That the applicant produced at the hearing witnesses having and establishing a need for the services applied for, and testifying that the service presently being rendered by certificated common carrier was not adequate to meet their needs, and the applicant sustained the burden of proving a need for the service as applied for in this application.

"7. That Garrett Freight Lines, Inc. is the only common carrier who appeared at the hearing holding intrastate authority on the commodities applied for between Gallup and Shiprock.

"8. That applicant will institute a minimum of three schedules per week between Gallup, New Mexico and Shiprock, New Mexico, serving intermediate points, and will institute additional schedules as the requirements of the shipping public demand.

"9. No testimony was offered by the protestants establishing that they are presently rendering adequate and satisfactory service of the commodities sought in the application between Gallup and Shiprock.

"10. That the Commission has taken into consideration existing transportation facilities in the territory for which the applicant's extension is sought, and finds from the evidence that the services of existing carriers in the territory are not adequate to meet the needs of the shipping public in the transportation of general commodities, excepting petroleum and petroleum products, oil field equipment and supplies as defined by the New Mexico Corporation Commission, commodities in bulk and livestock, between Gallup, New Mexico, serving all intermediate points.

"11. That the applicant has adequate equipment facilities, including refrigerated equipment, to serve the shipping

public, and to meet the public needs, requirements and convenience, in the authority applied for in its application.

"12. That the applicant is able, willing and financially capable of rendering the service applied for in its application.

"13. That a public need exists for the services of the applicant in the transportation of the commodities applied for in its application, serving the points proposed in its application.

"It is therefore ordered that Navajo Freight Lines, Inc. be and hereby is granted an extension of Certificate of Public convenience and Necessity 55–C to operate a motor carrier service as follows:

"Transportation of general commodities, excepting petroleum and petroleum products in bulk, oilfield equipment and supplies as defined by the New Mexico Corporation Commission, commodities in bulk and livestock, between Gallup, New Mexico and Shiprock, New Mexico, serving all intermediate points, via U. S. Highway No. 666, over regular routes, under scheduled service.

"It is further ordered that this Commission, upon its own motion, hereby prescribes that appropriate Certificate will be issued forthwith, as herein granted, upon full compliance with specified requirements under the New Mexico Motor Carrier Act, and Rules and Regulations pursuant thereto.

"It is hereby further ordered, and made a condition of the Certificate to be issued hereunder, that the holder thereof shall render reasonably continuous and adequate service to the public in pursuance of the authority herein granted, and that failure so to do shall constitute sufficient grounds for suspension, change, or revocation of the Certificate.

"Dated this 18th day of August, 1955."

The matter having been submitted to the trial court upon the record of proceedings before the Commission and requested findings of fact having been duly filed by the respective parties, the court entered its decision consisting of findings of fact and conclusions of law which denied to Garrett and San Juan the relief prayed for. The case is before us to review the judgment of the trial court on the combined record for the proceedings before the Commission and before the court

Garrett and San Juan have challenged the judgment of the district court in upholding the order of the Commission directing an extension to certificate of public convenience and necessity No. 55–C be issued to Navajo to operate a motor carrier service between Gallup and Shiprock, with

certain exceptions. Prior to the extension so granted Garrett was the only motor carrier that serviced the Shiprock territory.

Garrett and San Juan contend that the Commission's order is unlawful and unreasonable, because it is not supported by any substantial and competent evidence and is contrary to the evidence of record, and therefore the court erred in dismissing their complaint.

■ The Commission must find sufficient evidentiary facts on which it may reasonably support its order and decree; the court on the other hand need only find as a fact that the action of the Commission is lawful and reasonable. The fact which the court is required to find is that the result reached by the Commission is supported by sufficient evidentiary facts to make the result reached by the Commission upon the basis of such facts lawful and reasonable.

■ In determining whether the court was correct in upholding the Commission's action it is to be borne in mind that under New Mexico statutes the district court is not authorized to retry the case, or even on the basis of the record of the proceedings before the Commission to substitute its own judgment for that of the administrative body. Section 64–27–68, 1953 Compilation. The authority of the court is limited in its judicial function to determining whether or not the action or order of the Commission is lawful and reasonable. Transcontinental Bus System v. State Corporation Commission, 56 N.M. 158, 241 P.2d 829. It is not within the province of the courts to interfere with the Commission's administrative functions unless that agency's action is capricious, arbitrary or confiscatory. Harris v. State Corporation Commission, 46 N.M. 352, 129 P.2d 323.

Our basic concern must be whether the record discloses sufficient evidence to make it lawful and reasonable for the Commission to conclude, as it did, that the service of existing carriers in the territory involved are not adequate to meet the needs of the shipping public in the transportation of general commodities between Gallup and Shiprock; and that a public need exists for the service applied for by Navajo. Let us then review, briefly, some of the matters shown by the record.

Edward Junker, proprietor of two stores, one at Mexican Springs and one at Buffalo Springs off Highway 666 north of Gallup, testified that the majority of his freight had to be moved by the use of his own trucks, and that Garrett hauled some freight for him. He experienced a desire for refrigerated service, and stated if he could get the services of Navajo he would discontinue the use of his own trucks where possible. The proposed services of Navajo

were described as being needed by him, and further, that they would be a convenience and a benefit to him.

Harry L. Gardner, Assistant Area Director for Administrative Service, Gallup Area, Office of Indian Affairs, explained in detail the method in which his agency serviced the supply needs of the various Indian Schools and facilities on the Navajo Reservation. He described the size of the operation and the problems which have been coincident with the long range Navajo Rehabilitation program. At the time of the hearing the Office of Indian Affairs had to transport supplies from the warehouse at Gamerco to Shiprock and intermediate points in their own trucks. This agency desired to get out of the trucking business provided satisfactory common carrier service could be obtained. A refrigerated service run on a minimum schedule of three times a week, which was the service offered by Navajo, was the service desired according to this witness. He expressed a definite need for the service proposed by Navajo and stated that if the service was not provided his agency would have to continue providing it.

Richard W. Shepherd, Dispatcher at Gamerco for the Bureau of Indian Affairs, whose main assignment was to see that the supplies were properly dispatched to their destination stated that he had called upon Garrett to provide service on traffic north to Shiprock, Farmington and Aztec; and that he had experienced very unsatisfactory service from Garrett. He described the services rendered by Navajo to Albuquerque, Mescalero and Santa Fe as very adequate. The difficulties experienced with Garrett included failure of its truck to arrive when needed, inability of the truck to handle the load required and consistently slow service. Specific requests for service from Garrett resulted in a complete failure of this authorized carrier to provide same. When questioned concerning a need for the service offered by Navajo he stated there was a definite need for it, since it would release a lot of equipment to be used elsewhere on the reservation. That the proposed refrigerated service would be of definite benefit to him, since Garrett had never offered refrigerated service and further he had never seen any refrigerated units belonging to it in the area.

John C. Cole, Manager of the General Service Administration Depot in Gallup stated that the function of his department is to supply the needs of the Indian Service, Park Service and Forestry Service. That four or five million pounds of freight had moved from Gamerco to Shiprock during the previous year. When asked why he was not presently using the service of common carriers to Shiprock, he stated that

there were no adequate facilities available. That there was a definite need for the services proposed by Navajo; that said services would be beneficial; and that it would be used by his office. With respect to the services of Garrett he stated that he had never been solicited for freight business by a representative of said carrier; that it had shown very little interest in the matter and that he had cause for complaint.

John P. Monahan, Regional Traffic Manager for General Service Administration testified that his region included Colorado and New Mexico; that under the law his department was required to handle the transportation problems of all government agencies; and that his department desired to get out of the trucking business between Gamerco and Shiprock; that he used the services of Navajo in considerable volume in serving other areas, and had found said services entirely satisfactory. When questioned about the adequacy of existing carrier facilities between Gamerco and Shiprock, he stated that they were inadequate; that Garrett had refused to provide a service when requested to do so; that he had contacted the Denver agent of Garrett about the approximate business it could expect in the area involved, but had received no workable proposal. In addition, he stated that he had written to the Vice President in charge of Traffic for Garrett asking for specific advice concerning the availability of service, but had received only an ambiguous statement with no workable proposal with reference to the handling of the traffic. When questioned concerning a need for the service proposed by Navajo he stated that there was a definite need; that it would be a convenience to his services; that his department would use that service; and that he used the service of Garrett by necessity because Government equipment was not available from Gallup to Colorado points.

Roy B. Adams, Vice President in charge of Traffic for Navajo Freight Lines, testified first and sponsored applicant's Exhibits 1–4, inclusive. He explained that a survey had been made by his company concerning the transportation requirements in the area involved, and that his company was in a position to furnish sufficient equipment of the type needed to perform the service required by the public. The bulk of the needs pertain to traffic to be moved from Gamerco, New Mexico to Shiprock with about one-third of the gross tonnage being refrigerated freight. Mr. Adams explained that Navajo Freight Lines was a party to a tariff on file with the State Corporation Commission and that said tariff would be used in the event this application received favorable consideration. Concerning the

schedule that would be operated, the witness explained that it would be not less than three times a week, and if the freight warranted it the schedule would run daily.

Mr. Donald Leas, Chief Cost Accountant, Navajo Freight Lines, sponsored applicant's exhibit No. 5 which was the balance sheet and operating statement of his company, and showed the excellent financial condition of the applicant.

■■ The court cannot say that in view of the evidence in the record the determination made by the Commission was unlawful and unreasonable. It is not enough for us here to say that if the court had been acting independently it might have reached a different conclusion from that arrived at by the Commission in its determination: It is not for the court to substitute its judgment for that of the Commission. Transcontinental Bus System, Inc., v. State Corporation Commission, supra. To do so would be an invasion of the administrative and legislative functions of the Commission by the judiciary. The court must under circumstances of this sort act within the bounds of the statute, without intruding upon the administrative province. National Labor Relations Board v. Prettyman, 6 Cir., 117 F.2d 786. Or as this court aptly stated in Seaberg v. Raton Public Service Co., 36 N.M. 59, 8 P.2d 100, 101, the court's function is "to test the reasonableness and lawfulness of its orders. The function of the Commission is legislative; that of the court judicial." It is our considered judgment that the findings of the Commission are supported by substantial evidence.

Garrett and San Juan also claim that the grant of the extension to Navajo over the route in question will result in deterioration of the service to the general public and set the stage for ruinous competition to the public interest.

■ A decrease in revenue or sharing of existing tonnage will not in itself defeat an application.

In dealing with a similar proposition Mr. Justice Bickley in Harris v. State Corporation Commission, supra [46 N.M. 352, 129 P.2d 328], quoted approvingly from Inland Motor Freight v. United States, D.C., 36 F.Supp. 885, as follows:

"The circumstances that there are three truck lines and a railway operating between points involved and that operation of a third common carrier by motor vehicle to a certain extent decreases tonnage and revenue of other carriers will not in themselves defeat finding of Interstate Commerce Commission of 'public convenience and necessity' as basis for grant of application for certificate. * * *"

And in Beard-Laney v. United States, D.C., 83 F.Supp. 27, 32, affirmed 338 U.S. 803, 70 S.Ct. 64, 94 L.Ed. 486, the court said:

"It is for the Commission, not the court, to say what public convenience and necessity requires and whether these will be better served by licensing an additional carrier than by permitting those already licensed to expand the facilities."

See, also, Davidson Transfer & Storage Co. v. United States, D.C., 42 F.Supp. 215, affirmed 317 U.S. 587, 63 S.Ct. 31, 87 L.Ed. 481.

We deem the language from the federal cases just cited highly persuasive and we feel disposed to follow their reasoning in the case at bar.

Our conclusion that the findings made by the Commission, as to the reasonableness and lawfulness of its order, are supported by substantial evidence, renders unnecessary a separate discussion of other assignments of error presented by Garrett and San Juan. The judgment should be affirmed.

It is so ordered.

SADLER, McGHEE, COMPTON, and KIKER, JJ., concur.