[No. 39600.   Department Two.   November 21, 1968.]

BLACK BALL FREIGHT SERVICE, INC., *Appellant,* v. WASHINGTON UTILITIES & TRANSPORTATION COMMISSION *et al., Respondents.**

*Reported in 447 P.2d 597.

*Bogle, Gates, Dobrin, Wakefield & Long, J. Tyler Hull, Ronald T. Schaps, (William B. Adams,* of counsel), for appellant.

*The Attorney General* and *James R. Cunningham, Assistant,* for respondent Washington Utilities and Transportation Commission.

*Reaugh, Hart, Allison & Prescott, George H. Hart,* and *Jack R. Davis,* for respondent Poulsbo-Seattle Auto Freight, Inc.

HILL, J.—This is an appeal from a judgment of the Superior Court for Thurston County affirming a grant of authority by the Washington Utilities and Transportation Commission (hereinafter referred to as WUTC) to Poulsbo-Seattle Auto Freight, Inc. (hereinafter referred to as Poulsbo-Seattle), to serve south Kitsap County[1] from Seattle with "regular route, scheduled service" by motor carrier. The WUTC action was an extension of Poulsbo-Seattle's already existing permit to serve as a regularly scheduled motor carrier between north Kitsap County and Seattle.

The appellant, Black Ball Freight Service, Inc. (hereinafter referred to as Black Ball), has been the only motor carrier giving "regular route, scheduled service" to south Kitsap County since September, 1962, when it absorbed the only other motor carrier providing such service.

---

[1] Bremerton and Port Orchard comprise the major business centers of south Kitsap County.

The Superior Court for Thurston County affirmed the grant of authority on the ground that the findings of fact and the conclusions of law made by the WUTC were supported by material evidence in the record.

This litigation is the first to come to this court concerning the authority vested in the WUTC by RCW 81.80.070 as amended in 1963. Prior to 1963, RCW 81.80.070 read in part:

> No permit or extension thereof shall be granted if the commission finds that the applicant is not financially able, properly and adequately equipped, and capable of conducting the transportation service applied for in compliance with the law and rules and regulations of the commission, and the commission may deny an application if the applicant or any of its principal officers or stockholders fails, or has failed, to comply with the laws of this state.
>
> . . . [T]he commission may deny an application when it appears clearly, after public hearing, that the additional service would unreasonably congest the highways or tend to impair the stability and dependability of the service essential to the public needs.
>
> The commission . . . may deny an application for permit or extension, if it appears that the grant of such permit or extension would not be in the interest of the shipping public or would tend to impair the stability or dependability of existing service essential to the public needs or requirements.

For the language quoted above, the 1963 amendment substituted the following:

> A permit or extension thereof shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the services proposed and conform to the provisions of this chapter and the requirements, rules and regulations of the commission thereunder, and that such operations will be consistent with the public interest, and, in the case of common carriers, that the same are or will be required by the present or future public convenience and necessity, otherwise such application shall be denied.

The statute, as amended, is substantially the same as the federal statute appertaining to the issuing of permits by the Interstate Commerce Commission (hereinafter referred to as ICC) to interstate motor carrier applicants. 49 U.S.C.A., § 307 (1963). Since enactment of the federal statute in 1935, there have been numerous cases construing the authority vested by it in the ICC. Obviously, these cases constitute cogent authority insofar as they bear on the issues presently before us.

The appellant makes five major contentions on this appeal to which we will give consideration.

1. The WUTC erred in finding that Black Ball had a monopoly in south Kitsap County.

■ It is undisputed that Black Ball had the only "regular route, scheduled service" between south Kitsap County and Seattle, and with reference to that type of service it did have a monopoly. The WUTC, recognizing the existence of competition from irregular route nonscheduled carriers, pointed out that it was not comparable to a "regular route, scheduled service" since the irregular carrier was not obligated to run until it had a full load.[2]

The WUTC made clear that it recognized the question of policy involved between regulated monopoly and competition, and it was its point of view that competition might better serve the public interest in this particular situation.

2. The WUTC erred in concluding that the existence of already adequate service is not grounds for the denial of authority for additional service.

■ The WUTC specifically found that Black Ball's service was adequate. The record indicates that if the service was adequate it was still far from satisfactory to numerous shippers and consignees. The cases clearly state

---

[2]This is significant since many of the businessmen testifying at the hearing stated that one of their main concerns was Black Ball's frequent inability to provide them with delivery of goods from Seattle to their place of business on the same day that the goods were ordered. Irregular carriers, from the very nature of their service, cannot provide this "one-day service."

that adequacy of existing service is only one element to be considered in the determination of public convenience and necessity. There need not be a specific finding that existing service is inadequate before additional service can be authorized. *United Van Lines, Inc. v. United States*, 266 F. Supp. 586 (E.D. Mo. 1967); *Texas Mexican Ry. v. United States*, 250 F. Supp. 946 (S. D. Tex. 1966); *Campus Travel, Inc. v. United States*, 224 F. Supp. 146 (S.D. N.Y. 1963); *Sloan's Moving & Storage Co. v. United States*, 208 F. Supp. 567 (E.D. Mo. 1962), *aff'd per curiam*, 374 U.S. 95 (1963).

3. That Poulsbo-Seattle did not meet the burden of proving that the permit for the additional authority was required by present or future public convenience and necessity.

■ It is true that the applicant has the burden of proving that additional service is required by public convenience and necessity. Whether the burden has been met is for the WUTC to decide. The determination that future public convenience and necessity will be served by reason of competition is one of the inherent functions of the commission performing its discretionary duties, and comes directly within the purview of the philosophy of administrative expertise in determining such matters. The weight and value of the inferences to be drawn from the testimony is for the WUTC to determine. The determination of the WUTC should not be overturned by the court when the WUTC has acted within the scope of its expertise and competence and is supported by material evidence in the record. *State ex rel. Bremerton Transfer & Storage Co. v. State Util. & Transp. Comm'n*, 67 Wn.2d 876, 410 P.2d 602 (1966); *Herrett Trucking Co. v. State Pub. Serv. Comm'n*, 61 Wn.2d 234, 377 P.2d 871 (1963). It has been expressly held that the Interstate Commerce Commission may authorize new services for the very purpose of providing the public with the benefits of competition. *Petroleum Carrier Corp. v. United States*, 258 F. Supp. 611 (M.D. Fla. 1966); *Alexandria, Barcroft & Washington Transit Co. v. United States*,

103 F. Supp. 607 (E.D. Va. 1951); *Lang Transp. Corp. v. United States,* 75 F. Supp. 915 (S.D. Cal. 1948). The determination of the WUTC that competition will benefit the south Kitsap County area is in accord with these cases and is supported by material evidence in the record.

4. The WUTC erred in finding that competition would not result in deterioration of service.

Black Ball contends that its operating ratio[3] is 98 per cent, thereby constituting Black Ball as a marginal carrier, and thus a reduction in revenue caused by the additional carrier will necessarily result in a deterioration in service. It is the opinion of the WUTC that competition will result in an improvement of service. There is no evidence that competition will result in a deterioration in service except for the self-serving testimony of Black Ball's officers. The record, as a whole, indicates that the service was better prior to 1962 when Black Ball had competition, and there is no evidence that its operating ratio was worse during that period.

In any event, the courts have consistently held that a possible loss in revenue is not a sufficient ground for denying an application, when the need for more service has been shown. *Atlanta-New Orleans Motor Freight Co. v. United States,* 197 F. Supp. 364 (N.D. Ga. 1961); *Inland Motor Freight v. United States,* 36 F. Supp. 885 (D. Ida. 1941).

5. That the court erred in holding that the findings of the commission were supported by material evidence in the record and that the order of the commission was not arbitrary and capricious.

The appellant does not argue directly on this point, apparently feeling that an inference of arbitrary and capricious action can be drawn from its other arguments against the WUTC's findings and conclusions.

---

[3]The operating ratio is the percentage of costs and expenses to total revenues received. An operating ratio of 98 per cent means that expenses and depreciation amount to 98 per cent of total revenues and that there is a net profit of only 2 per cent.

Having failed to agree with the appellant on any of its first four contentions, it follows that we do not agree with it on its fifth, which is predicated on having established some if not all of the others.

The WUTC is an administrative agency and, as such, is a fact-finding tribunal. By statute, its findings are prima facie correct. RCW 81.04.430. The burden is on the one attacking the determination to show that it is not supported by the evidence or that it is arbitrary and capricious. There is conflicting evidence in the record, but it is obvious that the commission weighed the evidence and came to a considered conclusion within the scope of its authority and expertise.

The trial court found no basis on which to overturn the commission's conclusion that the grant of authority to Poulsbo-Seattle to provide regularly scheduled service between south Kitsap County and Seattle best met the standards of public convenience and necessity. This finding is supported by the record and the decree appealed from is affirmed.

FINLEY, C. J., HAMILTON and NEILL, JJ., and GAINES, J. Pro Tem., concur.

---

January 22, 1969. Petition for rehearing denied.