**MILNE TRUCK LINES, INC., Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION OF UTAH; Brent H. Cameron, David R. Irvine and James M. Byrne, Commissioners of the Public Service Commission of Utah, and P.B.I. Freight Service, Inc., Defendants.**

No. 19237.

Supreme Court of Utah.

June 20, 1986.

**21.** *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

Frank S. Warner, Douglas J. Holmes, Ogden, for appellant.

William S. Richards, David L. Wilkinson, Atty. Gen., James L. Barker, Jr., Div. of Public Service, Salt Lake City, for respondent.

STEWART, Justice:

The plaintiff, Milne Truck Lines, Inc., contends on this petition for review that the Public Service Commission (PSC) erred

in denying it common carrier authority to haul general commodities over irregular routes between points within the Salt Lake-Utah County area.

The PSC denied Milne's application on the ground that (1) Milne failed to prove "either an inadequacy in the existing service or potential market growth justifying new service" and (2) even if inadequacy of existing service were assumed, additional competition from Milne in the market area was not in the public interest because it might seriously weaken the protestant PBI Freight Service Inc. (PBI) and result in a loss of motor common carriage of general commodities to remote areas of Utah outside the Salt Lake-Utah County area.

Rio Grande Motor Way, Inc., held the same intrastate authority as that sought by Milne until May 26, 1982, when Rio Grande abandoned its authority. The next day Milne was granted the same authority on a temporary basis. PBI, a motor common carrier which has general commodity authority over irregular routes in the same area, protested Milne's application on the alleged ground that competition from Milne would put PBI out of business. PBI is the only other carrier that has such authority in that area.

Milne contends that the Commission erred in four respects. It asserts that (1) the Commission applied an erroneous legal standard in requiring Milne to prove either inadequacy of existing service in the market area or potential market growth which would justify new service; (2) the Commission's finding that competition between Milne and PBI would be detrimental to the best interests of the state was not supported by substantial evidence; (3) Milne is entitled to a certificate as a matter of law because of unrebutted evidence which established a potential need for future service in the market area; and (4) Milne's application should have been judged under the standards which govern the transfer of existing authority rather than those that govern the grant of new authority because Milne sought the same authority that Rio Grande Motor Way had abandoned.

## I. THE FACTS

The applicant, Milne Truck Lines, is a subsidiary of Sun Oil Company and has intrastate authority in Arizona, California, Nevada, Utah, and Wyoming, as well as interstate authority. The intrastate authority sought by Milne in Salt Lake and Utah Counties was held by Rio Grande Motor Way from approximately 1970 until May 26, 1982. When Milne submitted its application to the Commission on May 27 for the same authority as that abandoned by Rio Grande, it was granted temporary intrastate authority in the Salt Lake-Utah County area, pursuant to which it has served approximately 220 shippers in that area. Following the hearing on Milne's application for permanent authority, the PSC found that Milne had run a system-wide deficit over the previous two years, but found it financially fit and operationally able to serve the area.

PBI Freight Service, Inc., has intrastate common carrier authority in Utah, roughly from Salt Lake County south, including points in Utah, Grand, Kane, Millard, Sevier, and San Juan counties. PBI also has interstate authority into Arizona, California, and Nevada. With the withdrawal of Rio Grande, PBI became the only permanently authorized intrastate general commodity carrier between Salt Lake and Utah counties, although specialized carriers compete in the market area to some extent. PBI has, according to the Commission's findings, a reasonably sizeable net worth, but was experiencing a cash flow problem at the time of the hearing. For the period January 1 through October 1, 1982, D and H Investment Co., PBI's parent company, had gross revenue of $2,824,758, which included operating revenue of $1,347,185, interstate truckload revenue of $414,468, contract revenue of $1,046,941, and other revenue of $16,164. For the same period, it earned a net income of $22,660, of which approximately $8,000 was from operations. The Commission's finding that PBI suffered an $80,000 deficit is simply in error. The Commission also found that PBI has

idle equipment and can "easily provide the proposed service at present levels or substantially increased levels."

In denying Milne's application, the Commission found that PBI's traffic into Utah County had been "steadily declining" over the preceding three years as a result of the "generally poor economy, federal deregulation which had allowed an increase in the number of interstate carriers hauling into Utah County, and increased specialized carrier competition." The Commission also found that the traffic "over the past two to three years had been at best marginal for the support of two general commodity common carriers."

The Commission ruled that since Milne was applying for the same authority that an existing carrier already had, Milne had the burden of proving either inadequacy of existing service or a future need for additional service and that Milne had failed to meet its burden. The Commission held that even if PBI's service were deficient, the public interest nevertheless required a denial of the application because of the potential impact of the loss of PBI service to areas outside the Salt Lake-Utah County market area.

## II. INADEQUACY OF SERVICE AS PREREQUISITE TO AUTHORIZATION OF NEW AUTHORITY

The Commission erred in ruling that Milne had to prove an inadequacy of existing service or a future need for expanded service as a prerequisite to obtaining the authority sought. It is decidedly not the law that established motor common carriers should be protected by the Commission from new competition as long as they provide a reasonably adequate service and can meet growing demands for common carrier service. *Big K Corp. v. Public Service Commission*, 689 P.2d 1349 (Utah 1984); *Ashworth Transfer Co. v. Public Service Commission*, 2 Utah 2d 23, 268 P.2d 990 (1954). Utah law does not grant certificated common carriers a vested interest in the market areas they serve; their certificates of authority do not confer the

right to exclude competition simply to protect their own self-interest. On the contrary, it is the policy of the act to foster competition, unless the public convenience and necessity dictates otherwise, because competition in most cases stimulates better service and lower rates far more effectively and efficiently than the Commission can by regulation.

As this Court stated in *Big K, supra:*

In determining whether the public interest and necessity are served by additional service, the Commission must consider numerous factors. It must weigh the benefits to be derived from increased competition, such as the potential beneficial effect upon rates, customer service, the acquisition of equipment more suitable to customer needs, the efficient use of equipment, greater responsiveness in meeting future shipper needs, and greater efficiency in the use of route structures and interlining arrangements. In *Union Pacific Railroad Co. v. Public Service Commission*, 103 Utah 459, 466, 135 P.2d 915, 918 (1943), this Court stated that "regulated competition is as much within the provisions of [§ 54-6-5] as is regulated monopoly.... No one can have a vested right to be free from competition, to have a monopoly against the public."

*Id.* at 1354.

In *Big K, supra,* the Commission denied a carrier's application for route authority which competed with existing carriers because the applicant failed to prove an inadequacy of service by the existing carriers. This Court reversed on the ground that the Commission had erred in holding that an applicant's failure to prove "inadequacy of service" required denial of the application. The Court held that U.C.A., 1953, § 54-6-5, which governs the issuance of certificates of public convenience and necessity for motor common carriers, was not intended to protect the private interests of existing carriers in a given market, that "competition is almost always an affirmative factor in furthering the public convenience and necessity[,]" and that diversion of revenue

from existing carriers by additional competition "is not a valid reason by itself to justify a denial of additional authority." *Id.* at 1355. The Court stated:

> The ultimate criterion against which all relevant factors are to be evaluated is the "public good and convenience," *Salt Lake & Utah Railroad Corp. v. Public Service Commission,* 106 Utah 403, 408, 149 P.2d 647, 649 (1944), not the existing carriers' convenience and necessity. *See Lake Shore Motor Coach Lines, Inc. v. Welling,* 9 Utah 2d 114, 120, 339 P.2d 1011, 1014–15 (1959).... [C]ompetition is almost always an affirmative factor in furthering the public convenience and necessity.

*Id.*

■ Proof of inadequate service may require the Commission to grant new authority, but it does not follow that proof of adequate service requires a denial of new authority. The Commission's duty is to protect the public interest, not the entrenched rights of the industry it is charged with regulating. The adequacy of existing service is only one factor which the Commission should consider in determining whether the issuance of additional authority is consistent with the public convenience and necessity.[1] The existence of adequate service in a market area does not mean that service could not be improved by competition. Although the Commission should not allow a carrier to engage in predatory competition, the beneficial effect of competition on service and rates, notwithstanding an adverse impact on existing carriers, should be recognized in determining whether the public interest requires new authority. We agree with the principle stated by the Minnesota Supreme Court in *Quinn Distributing Co. Inc. v. Quast*

*Transfer, Inc.,* 288 Minn. 442, 450, 181 N.W.2d 696, 700 (1970),

Even if Quinn's service had been always completely exemplary and even if Quinn were able to expand its services according to increasing demand, the commission could still reasonably conclude that a grant to another carrier would be in the public convenience and necessity.

■ A corollary of the above principle is that a diversion of traffic or revenue from existing carriers by additional competition is not a valid reason by itself to justify a denial of additional authority. *Big K,* 689 P.2d at 1355. That principle is widely recognized. The Supreme Court of Washington in *Black Ball Freight Service, Inc. v. Washington Utilities & Transportation Commission,* 74 Wash.2d 871, 447 P.2d 597 (1968), stated that "the courts have consistently held that a possible loss in revenue is not a sufficient ground for denying an application, when the need for more service has been shown." *Id.* at 876, 447 P.2d at 600. In a similar vein, the Supreme Court of New Mexico stated in *Garrett Freight Lines, Inc. v. State Corporation Commission,* 63 N.M. 48, 312 P.2d 1061 (1957): "A decrease in revenue or sharing of existing tonnage will not in itself defeat an application [by another motor carrier to furnish additional service]." *Id.* at 56, 312 P.2d at 1066. *See also State ex rel. Churchill Truck Lines, Inc. v. Public Service Commission,* 555 S.W.2d 328, 335 (Mo.Ct.App. 1977); *Bralley-Willett Tank Lines, Inc. v. Holtzman Oil Corporation,* 216 Va. 888, 890, 223 S.E.2d 892, 894 (1976). If the law were otherwise, authorization of additional competition would never be justified.

■ In sum, we hold that the Commission erred in ruling that because PBI's

---

1. Other courts have also held, consistent with our view in *Big K, supra,* that inadequacy of service is only one factor to be considered in determining the ultimate question of the public convenience and necessity. *See, e.g., Black Ball Freight Service, Inc. v. Washington Utilities & Transportation Commission,* 74 Wash.2d 871, 875, 447 P.2d 597, 599 (1968); *Hartwig v. Pugh,* 97 Idaho 236, 241, 542 P.2d 70, 75 (1975); *Samardick of Grand Island-Hastings, Inc. v. B.D.C.*
*Corp.,* 183 Neb. 229, 236, 159 N.W.2d 310, 315–16 (1968); *Bralley-Willett Tank Lines, Inc. v. Holtzman Oil Corp.,* 216 Va. 888, 890, 223 S.E.2d 892, 893–94 (1976); *United Van Lines, Inc. v. United States,* 266 F.Supp. 586, 589 (E.D.Mo. 1967); *Texas Mexican Railway Co. v. United States,* 250 F.Supp. 946, 950 (S.D.Tex.1966); *Campus Travel, Inc. v. United States,* 224 F.Supp. 146, 148 (S.D.N.Y.1963).

service was adequate Milne's application should be denied.[2]

### III. THE COMMISSION'S FINDINGS AND THE PUBLIC INTEREST

 The Commission cannot discharge its statutory responsibilities without making findings of fact on all necessary ultimate issues under the governing statutory standards. It is also essential that the Commission make subsidiary findings in sufficient detail that the critical subordinate factual issues are highlighted and resolved in such a fashion as to demonstrate that there is a logical and legal basis for the ultimate conclusions. The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency. To that end, findings should be sufficiently detailed to disclose the steps by which the ultimate factual conclusions, or conclusions of mixed fact and law, are reached. *See generally, Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). Without such findings, this Court cannot perform its duty of reviewing the Commission's order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action. In *Mountain States Legal Foundation v. Utah Public Service Commission,* 636 P.2d 1047, 1058 (Utah 1981), we stated in a somewhat different context:

> In administrative matters such as this, there must be findings on all material issues. *Colorado Wyoming Gas Co. v. Federal Power Commission,* 324 U.S. 626, 65 S.Ct. 850, 89 L.Ed. 1235 (1945); *Pan American Petroleum Corp. v. Wyoming Oil and Gas Conservation Commission,* Wyo., 446 P.2d 550 (1968). Only then can the interests of the public, the ratepayers, and the utility be protected. Furthermore, it is not possible for

this Court, without such a foundation, to perform its assigned task of judicial review. *Application of Hawaii Electric Light Co., Inc.,* Hawaii, 594 P.2d 612 (1979); *American Can Co. v. Davis,* 28 Or.App. 207, 559 P.2d 898 (1977).

 The ultimate standard which governs the issuance of a certificate of authority is whether "the public convenience and necessity require" the granting of a certificate. Whatever would be detrimental to the "best interests of the people of the state of Utah" is relevant to the issue of whether new authority comports with the public convenience and necessity, including the effect upon "the existing transportation facilities in the territory proposed to be served, and the travelling public." § 54–6–5. The public convenience and necessity contemplates "the most efficient and economical service possible" to the public under the circumstances. *PBI Freight Service v. Public Service Commission,* 598 P.2d 1352, 1354 (Utah 1979).

In ruling against Milne, the Commission focused on two concerns. First, it purported to address the financial condition of PBI and the economic conditions of the market area in question; however, its findings were inadequate. The Commission found that for the past two or three years, the Salt Lake-Utah County market area "had been at best marginal for the support of two general commodity carriers," but it made no subordinate findings of fact that supported that conclusion. Indeed, Rio Grande's operations appear to have been profitable in that market area prior to its termination of operations. The Commission's findings do not indicate what PBI's experience had been in that particular area, although there is some evidence that it, too, was profitable. Beyond that, the evidence indicates that the Richfield market area was highly profitable for PBI. The Com-

---

**2.** Milne contends that the PSC erred in finding that PBI's service was adequate. Clearly the evidence was conflicting; indeed, the PSC expressly acknowledged that there was at least some degree of shipper antagonism toward, and discontent with, PBI. However, the Commission's finding is not so devoid of substantial

supporting evidence that it can be set aside. Harry L. Young & Sons, Inc. v. Public Service Commission, 672 P.2d 728, 729 (Utah 1983); Utah Department of Administrative Services v. Public Service Commission, *658 P.2d 601, 609 (Utah 1983).*

mission's findings that PBI's traffic into Utah County had declined does not necessarily mean that PBI was losing money on that part of its operations. Furthermore, the Commission made no finding as to whether the decline in traffic in the Salt Lake-Utah County market was due to a temporary slowing of the economy or to circumstances which might be long-term. Milne, however, adduced evidence that the population in the two counties was increasing rapidly and sought to infer from that fact the conclusion that the demand for transportation services would increase. The Commission did not address that point either. Beyond the inadequacy of the findings, the Commission confused a temporary cash flow deficit, which PBI experienced, with a deficit from operations which PBI had not experienced, according to its latest financial statement.

Second, the Commission stated its concern that the failure of PBI "with concomitant loss of its service to remote localities would be a detriment to the residents of those areas." [3] Although that is a relevant concern in assessing the public convenience and necessity, it was not supported by adequate subsidiary findings of fact. The Commission did not find that issuance of the authority would put PBI out of business or even impair its service to those areas. Indeed, there is no evidence of which we are aware that would support such a conclusion, although the Commission did find that competition in the Salt Lake-Utah County market area would "substantially increase the overhead costs which would have to be allocated to other routes extending beyond Utah County which protestant serves...."

■ Even though the economic welfare of shippers and of the citizens generally in the more remote parts of Utah is a significant factor, the Commission cannot make a rational decision on where the public inter-

est lies in this matter without making some effort to balance the affirmative effects of competition to shippers in the Salt Lake-Utah County area against the impact on PBI and its ability to serve the outlying PBI service areas at reasonable rates and the extent to which those rates might be affected, if at all. The issue has particular significance in the instant case because PBI now has a monopoly with respect to unrestricted common carrier authority in the most populous area in the state. Of course that monopoly is not an absolute economic monopoly; there are limited forms of competition from private carriers, specialized common carriers, and, to some degree, from interstate carriers. Nevertheless, the number of shippers and the volume of freight that PBI is alone authorized to serve are no doubt significant.

■ Finally, the Commission made no finding at all showing the relative importance of the Utah County traffic to the total PBI operation, apparently because there was no evidence on the point. Such an analysis would seem essential to placing the other findings in a context in which it is possible to judge their importance. In this regard, we note that although an applicant generally has the burden of proof in a proceeding for new authority, a protestant who urges an adverse impact on it as a reason for denying the application, has the burden of proof on that point. That burden cannot be met simply by conclusory statements in oral testimony.

Since the Commission applied an incorrect standard in determining the effect to be given competition in assessing the public convenience and necessity, it is necessary to remand to the Commission to reconsider this case in light of the appropriate standard. It is, of course, the prerogative of the Commission to decide the ultimate issue, but it will also be necessary for the

---

**3.** The Commission, however, made no finding that PBI would go out of business if Milne's application were approved. In its conclusions of law, the Commission referred only to the "potential impact on areas outside the immediate proposed service area," but the Commis-

sion's report also refers to a shifting of some of PBI's overhead costs to the service performed in that area if additional authority were granted, thereby assuming that PBI would not be put out of business by additional competition.

Commission to make additional findings of fact that resolve issues which are relevant to the legal standards that will govern the Commission's decision. Some of those issues have been outlined above.

## IV. TRANSFERABILITY OF RIO GRANDE'S AUTHORITY

 Milne contends that its application for a certificate of public convenience and necessity was in effect a request for a transfer of Rio Grande's certificate, which relieved Milne of having to justify the issuance of new authority. See *Collett v. Public Service Commission*, 116 Utah 413, 416, 211 P.2d 185, 187 (1949), which held that the transfer of authority from one carrier to another did not require the transferee to prove that the transfer furthers the public convenience and necessity. But that rule does not apply when the putative transferor's authority has been revoked by the Commission. Since Rio Grande's authority was revoked, the instant case is not the equivalent of a transfer of authority.

Reversed and remanded for further proceedings.

HALL, C.J., and DURHAM, HOWE and ZIMMERMAN, JJ., concur.