PBI FREIGHT SERVICE and Four Corners Trucking, Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF UTAH, Milly O. Bernard, Olof E. Zundel, and Kenneth Rigtrup, Commissioners of the Public Service Commission of Utah, and Ray Bethers Trucking, Inc., Defendants.

No. 16212.

Supreme Court of Utah.

Aug. 14, 1979.

Rick J. Hall of Richards, Brandt, Miller, Nelson & Zarr, Salt Lake City, for plaintiffs.

Robert B. Hansen, Atty. Gen., Salt Lake City, for Public Service Comm.

Lon R. Kump, Salt Lake City, for Bethers.

**CROFT, District Judge:**

This case is before the Court on writ of certiorari for review of an order of the Public Service Commission of Utah (Commission) dated June 8, 1978, granting Ray Bethers Trucking (Bethers) a Certificate of Convenience and Necessity to operate as a .common motor carrier for the transportation of gypsum, gypsum products and materials used in the manufacture and distribution thereof over irregular routes from Sevier County, Utah, to all points and places in Utah, and to transport rejected shipments on return movements. Other than for slight changes in certain findings of fact, a motion for reconsideration and for dismissal of the application was denied by the Commission on December 4, 1978.

At the hearing before the Commission on the application for such certificate, held on February 23, 1978, plaintiffs PBI Freight Service (PBI) and Four Corners Trucking (Four Corners) appeared as protestants to the granting of the certificate. Prior to that hearing the Commission had on November 29, 1977, granted Bethers a temporary certificate to operate over the public highways of the State of Utah between Sevier County, Utah, to all points and places in Utah for the purpose of transporting such gypsum products for Georgia-Pacific Corporation, which operates a wallboard fabricating plant at Sigurd, Sevier County, Utah.

Bethers has for several years operated as a carrier in nine western states, including Utah, under interstate authority granted by the Interstate Commerce Commission (I.C.C.). It operates 40 tractors and 95 forty-foot flatbed trailers. Each of its drivers has transported gypsum products from Sigurd, but only in interstate commerce until November 29, 1977, when temporary intra-

state authority was granted to it by the Commission as aforesaid. Its interstate authority extends to all points in Utah.

PBI also holds interstate authority issued by the I.C.C. and intrastate authority from the Public Service Commission of Utah for general commodity hauling upon regular routes from Salt Lake City, Utah, to and through the main centers of Utah County, to Nephi, Delta and Fillmore, Utah, and down U.S. Highway 89 to Kanab, together with irregular route authority in all the counties except Salt Lake County, through and to which its regular routes extend, including Sevier County. Its operating equipment includes 42 dual drive tractors, 7 flatbed trailers and 81 van trailers, the latter of which PBI concedes are not suitable for hauling wallboard. Its general commodity authority includes such products as wallboard. Intrastate shipments of general commodities by PBI to points in Utah beyond its existing authority are handled on an interline basis by agreement with other carriers having authority for hauling to such points. This is done generally by PBI leasing its truck, trailer and driver to the interline carrier so that the load can be hauled right on through with minimal delays for inspections and checking shipping documents.

Four Corners has a general commodities authority from the Commission for hauling from Salt Lake City and Provo to Moab, Monticello and Blanding, Utah. It has no authority for any haulage from Sigurd and it does not appear from the record that any carrier other than PBI and Bethers has any authority to haul wallboard or general commodities from Sigurd.

Under existing authority, in order to deliver gypsum products from Sigurd to the Grand and San Juan County areas, PBI must send its driver and equipment to Sigurd, load and return to Provo or Orem where the interchange with Four Corners is effected and the delivery is then made to these two counties under Four Corners authority from Provo or Orem. Use of new I–70 from Salina to Green River is not available to either PBI or Four Corners under existing authority. Hardy G. Roberts is president of both PBI and Four Corners.

By this review plaintiffs seek to have this Court set aside and nullify the orders of the Public Service Commission of June 8, 1978, and December 4, 1978, by which Bethers was granted its Certificate of Convenience and Necessity. In support thereof plaintiffs contend the actions taken by the Commission are unsupported by both the facts and the law, exceed the authority of the Commission, are contrary to the evidence and are thereby unlawful.

■ The Public Service Commission is charged with the duty of seeing that the public receives the most efficient and economical service possible. This requires consideration of all aspects of public interest, including the value of competition as well as the fact that existing carriers have a reasonable degree of protection in the operations they are maintaining. When a carrier applies for authority to institute a new carrying service, the Commission must take into account, not only the immediate advantage to some members of the public in increased service, and to the applicant seeking to enlarge the scope of its business, but must also plan long-range for the protection and conservation of carrier service so that there will be economic stability and continuity of service.[1]

■ Considerations of policy are primarily the responsibility of the Commission. It is well settled that this Court cannot substitute its judgment for that of the Commission and its findings will not be disturbed when they are supported by com-

---

1. *Lake Shore Motor Coach Lines, Inc. v. Bennett*, 8 Utah 2d 293, 333 P.2d 1061; *Milne Truck Lines, Inc. v. PSC*, 11 Utah 2d 365, 359 P.2d 909.

petent evidence.[2] In considering such applications the Commission can take into account the record of the carriers in the field, the amount of business available in the area and the number and type of carriers necessary to service the area adequately.[3]

The statutes[4] of this state place the responsibility upon the Commission to determine whether a certificate of convenience and necessity should issue. This Court has stated its understanding of the statute to be that there should be a showing that existing services are in some measure inadequate, or that public need as to the potential of business is such that there is some reasonable basis in the evidence to believe that public convenience and necessity justify the additional proposed service.[5]

This Court has repeatedly stated that "convenience" and "necessity" are not segregable and are not to be considered as separate terms, but must be construed together and constitute a joint concept, which must be construed and considered according to the whole concept and purpose of the act.

As to what constitutes 'public convenience and necessity' must fundamentally have references to the facts and circumstances of each given case as it arises, as the term is not, and was not intended to be, susceptible of precise definition.[6]

The burden is upon the applicant for new carrier service to show, among other things, that public convenience and necessity would be served by the granting of its application. This means something more than showing the mere generality that some members of the public would like and on occasion use such type of transportation

service.[7] But it is not required that the facts found by the Commission be conclusively established, nor even that they be shown by a preponderance of the evidence. If there is in the record competent evidence from which a reasonable mind could believe or conclude that a certain fact existed, a finding of such fact finds justification in the evidence, and this Court cannot disturb it.[8]

The controversy in this case centers around shipments of gypsum products, primarily wallboard, from the rural community of Sigurd, Utah. Here two companies are engaged in the manufacture, sale and shipment of such products, namely, Georgia-Pacific and United States Gypsum. Of these two companies only Georgia-Pacific appeared at the hearing before the Commission and did so in support of the granting of the certificate to Bethers. No carriers other than Bethers and PBI were shown to have authority to pick-up and transport the gypsum products manufactured in Sigurd. As noted supra, PBI has limited authority as to the routes over and the points to which it can carry these products, and any delivery beyond its authority must be by interline with other authorized carriers. Clearly, the public interest is served by the continuous and prompt delivery of these essential building materials to all points in Utah.

In granting the certificate to Bethers the Commission concluded, based upon its findings, that while PBI and its interlining carrier, Four Corners, had demonstrated that in some respects they have the ability to furnish reasonably adequate service, such service was not "sufficient for the existing business or its potential," citing *Lake Shore*

2. See footnote 1, supra.

3. *Wycoff, Inc. v. PSC*, 119 Utah 342, 227 P.2d 323.

4. Section 54–6–5, U.C.A.1953.

5. See footnote 1, supra.

6. *Union Pacific R. Co. v. PSC*, 103 Utah 459, 135 P.2d 915.

7. *Lake Shore Motor v. Bennett*, see footnote 1, supra.

8. *Mulcahy, et al. v. PSC, et al.*, 101 Utah 245, 117 P.2d 298.

*Motor Coach Lines, Inc. v. Bennett.*[9] The Commission noted that Bethers had several times the equipment PBI was able to put on the line,[10] and that PBI's general commodity operations were liable to conflict with the supporting shipper's needs on short notice. There was testimony at the hearing that PBI had hauled only 40 loads for Georgia-Pacific during 1977, whereas between November 29, 1977, and the hearing date on February 23, 1978, Bethers had hauled 93 loads intrastate for that shipper. There was also testimony that Georgia-Pacific had experienced a delay of from two to seven days from PBI in placing its equipment at the plant in Sigurd for loading, although this testimony was hearsay in nature and Georgia-Pacific offered no documentary proof that such was the case. It was also stated that the time and places of need for delivery cannot be anticipated on a daily basis.

Prior to the granting of the temporary authority to Bethers on November 29, 1977, Georgia-Pacific shipped most of its gypsum products from Sigurd in its own proprietary fleet, rather than utilizing further services afforded by PBI. At the time of the hearing Georgia-Pacific was shipping about 50 loads per month, most from the plant directly to Utah customers, and most by Bethers but some still by use of its own equipment. The business of Georgia-Pacific is marketing its product, not transportation, which it prefers to leave to common carriers, thus freeing its proprietary hauling equipment for use in delivering its merchandise to its customers from its distribution center in Salt Lake City. Its customers include general contractors, lumber yards, applicators, and smaller customers throughout Utah. It ships wallboard and other gypsum products to three primary marketing areas—Utah, Idaho and California. Bethers has hauled 4,500 truck loads

to California since 1974 for Georgia-Pacific under its interstate authority with very satisfactory results. However, due to an increase in demand in Utah, Georgia-Pacific is beginning to ship its product to Utah customers instead of those in Idaho and California.

Customers of gypsum products require immediate, prompt delivery and it is important that these products be delivered in an undamaged condition. This requires use of flatbed trailers, tarps and proper tie down equipment, without which a manufacturer of wallboard products will not ship. The Commission made a finding that because of a need for interlining under PBI's existing authority, a possible problem existed in establishing responsibility between PBI and its interlining carriers for damage to the product. The Commission also found that Bethers had the ability to station equipment and personnel at the Georgia-Pacific plant where early morning loading at its limited loading facilities afforded prompt delivery service.

The Commission also concluded that in this time of energy shortage, it is important that the circuitous route into Southeastern Utah, now required to be taken by PBI and its interline, Four Corners, could be avoided by granting Bethers the authority sought, which would enable the use of the new interstate I–70 between Salina and Green River, resulting in a substantial reduction in the mileage to be traveled. It would also allow Bethers to pick up shipments at Sigurd by trucks hauling products from California to Southern Utah, thus avoiding dead-head mileage by such trucks.

The Commission further concluded that the authority to use irregular routes in Salt Lake County, where a great deal of traffic is expectable, was not to be considered "unimportant". PBI's authority in Salt Lake County is limited to regular routes only,

9. See footnote 1, supra.

10. See comment supra indicating Bethers had 40 tractors and 95 forty-foot flatbed trailers, while PBI had only 3 tractors and 7 flatbed

trailers, doing most of its authorized general commodity hauling in its 81 van-type trailers not suitable for wallboard hauling.

and thus precludes its direct delivery to customers in many areas of that county as Bethers may do.

Evidence was presented at the hearing that haulage from Sigurd constituted only five percent of PBI's gross business, although constituting a higher percentage of its net profit. It is the contention of PBI, as testified by its president, Hardy G. Roberts, that its seven flatbed trailers were adequate to take care of all of the hauling required by both Georgia-Pacific and United States Gypsum from Sigurd; that it hauled about three times as many loads for the latter than the former; and that only two or three of its flatbed trailers were required to handle that existing business. PBI's average haul for Georgia-Pacific in 1977 was less than one load per week. At the same time Georgia-Pacific was doing most of its own hauling by use of its own proprietary trucks and trailers. The reason this condition prevailed was not otherwise made clear by the evidence presented at the hearing. Whether PBI could in fact handle 50 additional loads per month is uncertain. Roberts qualified his contention by saying PBI could borrow or buy other flatbeds if the need arose.

The Commission noted in its findings that during the third quarter of 1977 Georgia-Pacific contacted PBI to ascertain whether PBI would apply for carrier authority similar to that applied for and granted to Bethers. The Commission found that these negotiations remained nebulous until Georgia-Pacific told PBI that if there was no response on or before November 1, 1977, it would assume PBI was not interested in pursuing such an application or the available traffic. There being no response, Georgia-Pacific then gave its support to the application of Bethers. Hardy Roberts as president of PBI testified that PBI did not desire to expend the funds necessary to obtain the additional authority, because

PBI considered its present authority, together with its interline connections with other carriers, adequate to serve the needs of the two companies manufacturing gypsum products at their Sigurd plants. But as noted, the evidence shows that over the years PBI has handled only a small part of the shipments from the Georgia-Pacific plant and that that supplier has resorted to the use of its own equipment for delivering its product, or relied upon its customers to obtain it by use of their own trucks on a pick-up basis.

We believe from the record before us that the Commission's findings are supported by competent evidence; that there has been some showing that existing services are in some measure inadequate; and that the public need as to the potential of business is shown to be such that from the evidence we see a reasonable basis to believe that the public convenience and necessity justified the additional proposed service.[11]

The order of the Commission is affirmed.

CROCKETT, C. J., WILKINS and MAUGHAN, JJ., and THORNLEY K. SWAN, District Judge, concur.

HALL and STEWART, JJ., having disqualified themselves, do not participate herein.

11. See footnote 1 and 5 supra.