UINTAH FREIGHT LINES et al. v. PUBLIC SERVICE COMMISSION et al.

No. 7420. Decided October 25, 1950 (223 P. 2d 408)

See 60 C. J. S., Motor Vehicles, Sec. 90. Public Service Commission's order enlarging territory of common carrier as sustained by the evidence, note 87 A. L. R. 739. See, also, 43 Am. Jur. 700.

*Richards & Bird, Pugsley, Hayes & Rampton,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen., *F. Henri Henriod,* Salt Lake City, for defendants.

WOLFE, Justice.

Certiorari to review an order of the Public Service Com-

mission of Utah amending a certificate of convenience and necessity issued to the defendant, Guy Prichard, in 1946 by enlarging the territory within which he may operate.

In 1946 the Public Service Commission issued to Prichard a certificate of convenience and necessity authorizing him to operate as a common carrier by motor vehicle for the transportation of commodities which because of their size, shape, weight, origin, destination, or nature require special equipment or service of a character not furnished by regular common carriers of property. He was authorized to operate only between points lying within Carbon, Duchesne, Emery, Grand, San Juan, and Uintah Counties over irregular routes on call, and to and from any point within the aforementioned counties for connection with the rail head at Heber, Wasatch County, Utah. On June 15, 1949, Prichard filed with the Commission an application to amend his certificate by enlarging his operating territory. Specifically, he sought authorization to operate to and from any point within the State of Utah provided either the point of origin or destination of shipment was at a point within any of the aforementioned original counties or within the additional counties of Daggett, Garfield Kane, Piute, Sanpete, Sevier, Wasatch and Wayne.

Following a hearing on Prichard's application to amend his certificate held on July 21, 1949, at Price, Utah, the Commission amended his certificate to authorize his operation throughout the state of Utah, provided that either the point of origin or destination of shipment was within one of the six original counties (Carbon, Duchesne, Emery, Grand, San Juan and Uintah) and the additional county of Wayne. These counties are contiguous and lie in the eastern part of the state.

The plaintiffs and several other carriers who are not parties to this action appeared at the hearing held by the

Commission and protested the enlargement of Prichard's operating territory.

The sole question presented for our determination in this action is whether there was any competent evidence adduced at the hearing which supports the order of the Commission amending Prichard's certificate. It is therefore necessary to set forth a summary of the evidence.

Mr. Prichard, who resides in Price, advertises and holds himself out in eastern Utah as a carrier of heavy commodities and equipment. He owns six trucks equipped with winches and six trailers which are kept either at Price or at his warehouse in Thompson, Grand County. Prichard has loaded and hauled commodities weighing as much as twenty-five tons on one of his trailers. He testified that he had often been requested to make hauls between points within the original six counties and other parts of the state. During the period from July 19, 1958, to July 7, 1949, the Commission granted Prichard seventeen temporary permits to haul commodities either to or from points outside of the six counties within which he then was authorized to operate. In all of those instances, he testified, he satisfactorily performed the service requested of him. On several occasions crtain of the protestants called upon Prichard for aid in loading or unloading commodities which they lacked the necessary equipment to handle.

One Mike Gamber residing in Price and engaged in the coal mining business in Carbon County appeared and testified in behalf of Prichard's application. He testified that while it had been necessary to employ the services of a carrier of heavy commodities and equipment only once in the past twelve years, it would be a matter of convenience to him for a carrier who is acquainted in Carbon County to handle any hauling which he might have in the future. Less than a month prior to the hearing, Gamber requested Prichard to haul several pieces of tubing, five feet in dia-

meter and twenty-four feet long, from the Lang Manufacturing Company in Salt Lake City to Gamber's mine in Upper Spring Canyon in Carbon County. The Commission denied Prichard's application for a temporary permit to make this haul and the Salt Lake Transfer Company, one of the plaintiffs and protestants, transported the tubing. Because the Salt Lake Transfer drivers were not acquainted with the territory, Gamber had to meet them at Peerless and direct them to his mine. There was a delay of a few days in the arrival of the tubing, but it appears not to have been due to any fault on the part of the Salt Lake Transfer Company. Gamber further testified that industry in eastern Utah was developing; that the coal mining business was prosperous; and that growth of allied industries had kept pace with the coal boom.

G. W. Nielson, a contractor residing in Huntington, Emery County, testified that Prichard had made two hauls for him during the year 1948 between Price and Salt Lake City under temporary permits issued by the Public Service Commission; that his service was satisfactory in all respects; and that it was a matter of great convenience for him to have someone who could be reached in Price to make the hauls for him. He stated that in his opinion there was a definite need for the services of Prichard in hauling from Salt Lake City to eastern Utah. In support of his opinion, he cited the growth of the uranium industry in eastern Utah and the opening of new mines in that area. In October of 1946, the Ashworth Transfer Company, one of the plaintiffs and protestants, hauled several twenty-five foot lengths of 36" steel pipe into Emery County for the Huntington-Cleveland Irrigation Company. The Ashworth truck mired in the mud and had to be pulled by a Caterpillar tractor for about five miles. Nielson was of the opinion that the truck was overloaded. The pipe was unloaded by Ashworth by rolling it off the bed of the truck onto the ground. This produced several small bends in

some of the lengths of pipe. The following spring, Prichard hauled pipe to the same location, but he unloaded it with a winch.

J. L. Larson, secretary-treasurer of the Huntington-Cleveland Irrigation Company, residing in Huntington, testified that the aforementioned irrigation company had the need occasionally for the services of a carrier of heavy commodities and that it would be a matter of convenience for the company to employ a person in Price who was authorized to haul from points outside eastern Utah into that area.

George Jackson, general manager for the Independent Coal & Coke Company, residing in Kenilworth, Carbon County, testified in substance as follows: That he is engaged in the coal mining business in Carbon County and that he occasionally has the need of the services of a carrier of heavy commodities and equipment in connection with his business, and that it would be convenient for him to be able to employ Prichard to make the haul because he is located in Price where he can be easily contacted and because he has quipment which, he thought, other carriers in that locality do not have at their disposal. He stated, however, that he would give the Rio Grande Motor Ways, one of the protestants, a part of his hauling business if they had the equipment necessary to handle it.

Appearing at the hearing and protesting any enlargement of Prichard's operating territory were Rulon Ashworth and George Sims, managers of Ashworth Transfer Company and of the Salt Lake Transfer Company, respectively. Both companies hold certificates of convenience and necessity authorizing them to operate at large within the state of Utah. Mr. Ashworth tesitfied that his company maintains seventy pieces of equipment at its place of business in Salt Lake City, most of which are adapted to the transportation of commodities of unusual

size and weight and which require special handling; that the volume of business of his company has decreased twenty per cent during the last year; that the company had completely fulfilled all requests for service which they had received in the past year; and that the tariffs of both the Ashworth Transfer Company and Prichard are predicated upon a one-way haul. He states that Ashworth's business in the eastern Utah area had dropped a "good deal" in the last two years except hauling to and from Uinth County, where there is activity in the drilling for oil, which activity, Ashworth thought, would continue to increase.

Mr. Sims testified in substance that the Salt Lake Transfer Company owns the following operating equipment, most of which is kept in Salt Lake City; twelve heavy trucks, thirteen heavy tractors, four lowbeds, six semi-trailers, three pole trailers, one full trailer, and a derrick crane, all of which are adapted to the transportation of commodities which by reason of their size, shape, weight, origin or destination require equipment and service of a special type; that the company's business had decreased twenty per cent in the past year making it necessary to reduce the number of its employees from 115 to 70; that the company had at the present time idle equipment and employees ready to handle any request for service; that the company had experienced a small increase in business since 1946 (when Prichard was awarded his original certificate) in Uintah, Grand and San Juan Counties, but not in Carbon County; and that the company had been able to take care of that increase in business in those three counties. The Salt Lake Transfer Company maintains a place of business in Salt Lake City only, but it does have a business contact in Vernal, Uintah County. Persons in eastern Utah desiring service must phone, wire or write the company in Salt Lake City or its contact in Vernal.

Leroy A. Smith, division manager for the Utah division

of the Rio Grande Motor Ways, testifying in opposition to the enlargement of Prichard's certificate, stated that the Rio Grande Motor Ways is a carrier operating on a daily schedule between Salt Lake City and Price; that the company maintains terminal facilities in Price consisting of an office, freight dock, pick-up truck, and a semi-trailer; that the company has equipment in Salt Lake City with which it can load and transport commodities weighing up to six tons, but at the point of consignment the company has to rent a crane to unload such commodities; that the company owns flat beds which can carry a twenty-ton load; that since 1947 the volume of business of the company has decreased between twenty and twenty-five per cent; and that the company is operating in the "red" at the present time and depends upon business it receives from connecting carriers to sustain it.

Nick Galanis, president of the Carbon Freight Lines, testified that his company operates as a common carrier between Salt Lake City and Price and intermediate points on a daily schedule; that the company maintains depots in Salt Lake City, Provo, and Price where it has equipment stationed; and that the company's business in Carbon County had decreased about twenty-five to thirty per cent in the past year.

There is competent evidence in the record to sustain the determination of the Commission that present and future convenience and necessity require that Prichard's certificate be amended to allow him to operate between points in Carbon, Duchesne, Emery, Grand, San Juan, Uintah and Wayne Counties and other points within the state. It appears that eastern Utah is experiencing an era of growth and development. As has been pointed out, there is considerable testimony that in that area there is increased activity in the uranium and coal mining industries and in the drilling for oil. It is significant to note

that the protestant, Sims, while testifying that his company had sustained a twenty per cent decrease in business in the past year, did admit that it had experienced a small increase in Uintah, Grand and San Juan Counties. The protestant, Ashworth, predicted an increase in hauling to and from Uintah county.

While it may be true that Ashworth and Salt Lake Transfer have equipment and personnel ready to absorb any increase in business in eastern Utah, their equipment is kept in Salt Lake City and hence they are not as readily available to serve the residents of eastern Utah as is Prichard, who maintains his equipment in that area. For instance, if a shipper in eastern Utah desires to have a commodity of an unusual size or weight shipped to another part of the state, as it appears often happened during the year preceding the hearing, in order to obtain the services of Ashworth or the Salt Lake Transfer, the shipper must telephone, wire or write them in Salt Lake City. After receiving the request for service, the carrier must dispatch equipment to the point of origin of shipment in eastern Utah. From Salt Lake City to Price is 122 miles; to Vernal, 177 miles; to Moab, Grand County, 238 miles; and to Monticello, San Juan County, 291 miles. With the best of road conditions, it would take a carrier in Salt Lake City several hours to reach the point of origin of shipment. By being able to secure the services of Prichard in Price, a shipper in eastern Utah may be able to save hours of valuable time. Prichard testified that he had often been requested in the night time to make emergency hauls. While Ashworth, Salt Lake Transfer and Prichard are all parties to the same tariff, so that Prichard has no rate advantage over the other carriers, Prichard may be able to offer shippers in that area service with much less delay than can carriers which have their equipment stationed in Salt Lake City, and save them the cost and possible inconvenience of a long distance telephone call or a wire. These

are important considerations which may well have entered into the determination of the Commission to enlarge Prichard's operating territory.

We have not overlooked the fact that the Carbon Freight Lines and the Rio Grande Motor Ways have equipment stationed at their depots in Price which is readily available to serve shippers in that area. However, it appears that neither company has the equipment in that area necessary to load and haul commodities weighing upward to twenty-five tons, as has Prichard. Whether the Uintah Freight Lines has equipment stationed at points within Duchesne or Uintah Counties, which counties it serves on a daily schedule, is not revealed by the record. However, none of the equipment owned by or at the disposal of the Uintah Freight Lines has a carrying capacity greater than ten tons.

The order of the Commission is affirmed. Costs to the defendant.

PRATT, C. J., and WADE, LATIMER and McDONOUGH, JJ., concur.