268 P.2d 990

**ASHWORTH TRANSFER CO. et al.**

v.

**PUBLIC SERVICE COMMISSION et al.**

**No. 7968.**

Supreme Court of Utah.

March 26, 1954.

24

Pugsley, Hayes & Rampton, Salt Lake City, for plaintiff.

E. R. Callister, Atty. Gen., Peter M. Lowe, Asst. Atty. Gen., Lee Neff Taylor, A. Pratt Kesler, Salt Lake City, for defendant.

McDONOUGH, Justice.

The Public Service Commission of Utah, after a hearing upon an application by defendant, Harry L. Young & Sons, Incorporated, ordered that a certificate of convenience and necessity be issued to defend-

ant to operate as a common carrier by motor vehicle on irregular routes throughout the State for the transportation of:

"Commodities which by reason of their size, shape, weight, origin, or destination require equipment or service of a character not regularly furnished by regular common carriers at the regular line rate which commodities shall be such as, but shall not be limited to the following: gasoline tanks, boilers, pipes, and tubing to be used in connection therewith; cable, bridges, or structural iron or steel; concrete mixers, culverts, explosives, grading and road equipment, harvesters, and thrashers; locomotives, machinery and dragline outfits; piling pipe, pole line construction material; telephone or telegraph poles; rails, smokestacks; and heavy timbers; machinery, materials, supplies and equipment, incidental to, or used in the construction, development, operation and maintenance of facilities for the discovery, development, and production of natural gas and petroleum.

"Commodities in connection with the transporting of which is rendered a special service in preparing such commodities for shipment or setting up after delivery or otherwise rendering a needed service not a part of the ordinary act of transporting and not now regularly furnished by other regular common carriers for the regular line rates.

"All parts, supplies, equipment and appurtenances are a part of the same movement."

Protestants before the Commission who participated in the hearing included Ashworth Transfer Company and Salt Lake Transfer Company, common carriers holding prior certificates which give authority to transport, inter alia, the commodities described above, and these carriers brought the matter before us by Writ of Review.

The questions presented to us for review may be consolidated as follows: (1) May the Commission grant a certificate of convenience and necessity for a carrier to transport a large group of specified commodities when evidence of the need was not produced on each of the various items? (2) May the Commission consolidate the evidence of hearings on separate applications for the same or similar authority and base its separate orders upon considerations of all hearings? (3) Was there substantial evidence to support the findings and justify the order of the PSCU?

(1) It is conceded by the applicant that he did not produce evidence by direct testimony as to a public need for a common carrier to transport each of the items enumerated in PSCU's order. Indeed, even if he had secured witnesses on the specific items, plaintiffs' complaint might still subsist, for it would be impossible to produce evidence of a need for transportation of all of the items which might be encompassed within the general phrases of the au-

thority, viz., "Commodities which * * * require equipment or service of a character not regularly furnished," "shall not be limited to," "Commodities in connection with the transporting of which is rendered a special service" etc.

The Interstate Commerce Commission was recently confronted with the problem of descriptions to be used in the issuance of limited-commodity certificates in Ex Parte No. MC–45, decided October 20, 1952, and ruled that whereas in some types of hauling a complete listing of the commodities authorized is necessary, in other instances, a grouping under a generic or other general heading is more practical. The ICC recognized the problem of so restricting the carrier by the authority granted as to curtail its usefulness to prospective shippers and creating a situation where the shipper would have to employ several carriers to transport a shipment of a single truck load; on the other hand, a broad grant of authority under a generic heading often leads to abuses through "weird theories of interpretation and construction" to justify hauling commodities not contemplated by the grant.

In the present case, then, if the classification by the PSCU was a reasonable one, evidence of the need for and ability to perform hauling of the general category would be sufficient to justify the order of the commission. Examining the question with regard to heavy and bulky articles, the ICC, Ex Parte No. MC–45, supra, sheet 36, stated:

"The transporters of heavy and bulky articles are frequently referred to in the industry as heavy haulers and riggers, terminology which in large measure describes the service performed by them. * * * These carriers take the position that * * * there has been little, if any, difficulty interpreting their certificates. The commodities transported by this group of carriers generally are of such size or weight as to require special devices for their loading and unloading and the use of special equipment for their movement over the road. The commodities or articles do not follow any fixed pattern or fall into a generic classification or group as has been the case with some of those previously discussed. The heavy haulers and riggers transport and hold themselves out to transport, every kind of commodity the basic requirement of which is the use of special equipment or special handling. It may vary from a heavy piece of machinery to a huge girder."

Under this view, and under the general acceptance and interpretation by the industry, the ICC adopted the description "commodities which because of their size and weight require special equipment" for use under interstate certificates. It can readily be seen that the specific items set forth in the first paragraph of the PSCU's description fall into the category of "Commodities which by reason of their size, shape, weight, origin, or destination require equipment or

service of a character not regularly furnished by regular common carriers."

The only commodity listed not descriptive of the general category is "explosives." Although this item is perhaps somewhat inconsistently placed in the order of the list, it would be an included item under the general heading of "supplies * * * incidental to * * * operation * * * for the * * * production of natural gas and petroleum." This general classification, too, has been determined by the ICC to be a proper description of hauling authority. In re Application of T. C. Mercer and G. E. Mercer, No. MC–74595 (Sub–No. 15), decided May 24, 1946.

As to the third category utilized by the commission, apparently there is no question and plaintiffs themselves regard testimony of witnesses on such items as generator units as falling within the scope of "Commodities in connection with the transporting of which is rendered a special service in preparing such commodities for shipment or setting up after delivery." Further, this grouping appears to be an extension of the first category.

■ In light of the determination of the ICC that the above classifications are about as complete as can be expected in order to accomplish the duties of a public carrier in this field, and because there would appear to be no dispute as to the types of hauling described by the general classifications, we hold that the commission acted within its authority in granting a certificate under

such groups. If evidence supports a need for the three types of hauling, we need not examine the record to determine whether applicant produced evidence that there was a need for the transport of the specific items.

■ (2) At the time that the present application was before the PSCU, there were also pending three other applications for the same or similar authority, and in granting defendant the certificate, the Commission stated:

"As we stated in Case No. 3776, in view of all of the facts and circumstances involved in this case and in the cases above mentioned, we deem it necessary and proper to consider this case and Cases No. 3776, 3808 and 3809 together. This procedure is somewhat unusual, but it is justified by the exigencies of the situation with which we are confronted. We believe that the procedural discretion allowed the Commission permits a consolidation of the records in these cases in order to more accurately and logically ascertain and determine what decision will be in the public interest and best serve public convenience and necessity * * * it is necessary that the Commission consider these applications, not with the view as to how each individual applicant will be affected or whether the applications should be granted precisely as requested, but rather to consider the solution to the entire question raised by

these four cases with the object of establishing a sound transportation pattern in the specialized heavy hauling field and particularly oil and gas field transportation."

Plaintiffs object to the Commission's considering the evidence from the three other hearings in the determination of this particular application. The findings of the Commission refer to the hearings of other cases only to demonstrate that the Young Company was better able to fill the public need than other applicants for the same authority. The findings concerning necessity were based upon the present record and plaintiffs were not prejudiced by the consideration of which of the four companies was best equipped to handle the service. If there is competent evidence to support the conclusion of the Commission as to the Young Company, we need not consider the effect of the superfluous findings as to the other applicants who are not parties here.

(3) U.C.A.1953, 54-6-5, providing for the issuance of the certificate of convenience and necessity, states:

"If the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof it may issue the certificate * * *. Before granting a certificate to a common motor carrier, the commission shall take into consideration the financial ability of the applicant to properly perform the service sought under the certificate and also the character of the highway over which said common motor carrier proposes to operate and the effect thereon, and upon the traveling public using the same, and also the existing transportation facilities in the territory proposed to be served. If the commission finds that the applicant is financially unable to properly perform the service sought under the certificate, or that the highway over which he proposes to operate is already sufficiently burdened with traffic, or that the granting of the certificate applied for will be detrimental to the best interests of the people of the state of Utah, the commission shall not grant such certificate."

On review of an order of the Public Service Commission of Utah granting a certificate of convenience and necessity, it is not required that facts found by the Commission be conclusively established or shown by a preponderance of the evidence. The scope of review is limited to an ascertainment of whether the Commission had before it competent evidence upon which to base its decision. U.C.A.1953, 54-7-16; Wycoff Co., Inc. v. Public Service Commission, Utah, 227 P.2d 323; Uintah Freight Lines v. Public Service Commission, Utah, 229 P.2d 675.

There is no question as to the applicant's financial ability, his equipment and person-

nel, nor the quality of his service as a contract carrier under a former permit. Plaintiffs likewise do not contest the finding that the highways will not be unduly burdened, nor the finding that there will be no interference to the traveling public if the application is granted.

The objection of the plaintiffs is raised to the finding of a public need, considering the availability of the services of both Ashworth Transfer Company and Salt Lake Transfer Company in the heavy hauling field.

█ Witnesses testified to the growth of the gas and petroleum industry in the state of Utah and predicted, as expert witnesses, that numerous new fields would be opening in the near future. Witness Bernick is a newspaper man, whose duties, as business editor, required an extensive investigation of the operation of oil and gas fields throughout the state. Witness Hager is an oil geologist. Both witnesses testified in considerable detail as to the growth of the industry and the needs for immediate carrier service when a well is being drilled. Plaintiffs minimize the importance of this testimony by stating that the witnesses are not shippers and that not a single shipper testified as to the need for increased common carrier service in the oil fields. These men were probably better qualified to offer a picture of the entire industry than would be a small oil operator using trucking services.

Evidence of growth of an industry within the state is competent in a hearing to determine public convenience and necessity. Uintah Freight Lines v. Public Service Commission, Utah, 223 P.2d 408.

Evidence as to the need for increased service in the heavy hauling field was offered in a record concerning an alleged violation of authority by Harry L. Young & Sons, Inc., which record was made part of the record on application. A complaint was filed with the Commission by the present plaintiffs alleging that Harry L. Young & Sons, Inc., had violated its contract authority in hauling heavy equipment to be used during the emergency occasioned by a flood in Salt Lake City in 1952. Evidence in the hearing, although the officers of the Young Company admitted that they had no contract to haul for Salt Lake City, showed that the trucks and men of the Young Company were virtually comandeered by those in charge of the flood control. Witnesses testified that they were unable to get equipment from either Ashworth Company or Salt Lake Transfer at that time.

Additional evidence adduced at the hearing showed that fifteen shippers had requested service from the applicant within sixty days prior to the hearing on this application. Also, the Young Company holds an interstate certificate for hauling the heavy commodities and a shipper, doing interstate business, testified to the inconvenience of not being able to continue the haul

from a delivery point within the state to another point within the state. There is evidence that the plaintiffs have had to resort, in order to fulfill commitments, to leases, including leasing of applicant's equipment. Other witnesses testified as to lack of proper heavy hauling equipment and delays in shipping.

The "convenience" and "necessity" to be considered is that of the public, Mulcahy v. Public Service Commission, 101 Utah 245, 117 P.2d 298, and the statute does not require that the Commission find that the present facilities are entirely inadequate. It merely requires that the Commission "shall take into consideration * * * the existing transportation facilities"; it is obvious from the language of the order granting the application and the order denying the petition for rehearing, as well as the evidence, that the Commission did take these matters into consideration.

The order of the Commission is affirmed. Costs are awarded to respondent.

CROCKETT, HENRIOD, and WADE, JJ., concur.

WOLFE, C. J., does not participate herein.