HARRY L. YOUNG AND SONS, INC.
and Ashworth Transfer,
Inc., Plaintiffs,

v.

PUBLIC SERVICE COMMISSION OF
UTAH and Steel Transporters of California d/b/a Keep on Trucking, Defendants.

No. 18351.

Supreme Court of Utah.

Aug. 25, 1983.

Lon Rodney Kump, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Arthur A. Allen, Mark K. Boyle, Salt Lake City, for defendants.

DURHAM, Justice:

This case involves a writ of certiorari to this Court for review of an order of the Utah Public Service Commission ("Commis-

sion") granting a Certificate of Public Convenience and Necessity to the defendant Steel Transporters of California d/b/a Keep on Trucking ("Steel Transporters"). The Commission's order granted Steel Transporters authority to transport iron and steel articles over irregular routes from within ten counties located in central and northern Utah to all parts of the state, and between specific points within the ten counties. The order also granted authority to transport oil casing and tubular goods from points within five counties to other parts of the state, and between points within the five counties. We affirm the order of the Commission.

The plaintiffs, who were protestants at the Commission hearing on Steel Transporters' application, are common carriers with permits to service transportation routes in the same areas of Utah as those covered by the certificate granted to Steel Transporters. The plaintiffs raise four issues on appeal, claiming that the Commission erred in: 1) finding the applicant fit to perform the proposed service, 2) finding that the public convenience and necessity required a granting of the application, 3) failing to find that the granting of the application will be detrimental to the best interest of the public, and 4) granting the application in its entirety when it was only partially supported by the evidence. We will discuss the facts as they are relevant to each point of error.

The statute governing the issuance of a Certificate of Convenience and Necessity for common carriers in intrastate commerce is U.C.A., 1953, § 54–6–5. The pertinent portions of that statute provide:

If the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof it may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought . . . . Before granting a certificate to a common motor carrier, the commission shall take into consideration the financial ability of the applicant to properly perform the service sought under the certificate . . . and also the existing transportation facilities in the territory proposed to be served. If the commission finds that the applicant is financially unable to properly perform the service sought under the certificate . . . or that the granting of the certificate applied for will be detrimental to the best interests of the people of the state of Utah, the commission shall not grant such certificate.

At issue in this case are the Commission's findings of fact and its application of the statutory standard to the facts found. Under the applicable standard of review regarding the Commission's findings of basic facts, we must affirm those findings where they are supported by evidence of any substance whatever. *See Utah Department of Administrative Services v. Public Service Comm'n,* Utah, 658 P.2d 601, 608–09 (1983); *Williams v. Public Service Comm'n,* 29 Utah 2d 9, 13, 504 P.2d 34, 37 (1972). As to the Commission's interpretation and application of the statutes it is empowered to administer, we have adopted the following standard:

Considerations of policy being primarily the responsibility of the Commission, we give great weight to its conclusions on matters of this nature, and set its decision aside only if it is outside "the tolerable limits of reason" or "so unreasonable that it must be deemed capricious and arbitrary."

*Utah Department of Administrative Services, supra,* at 612 (citations omitted). The first and fourth claims of error raised in the present case concern factual findings of the Commission. The second and third claims involve the Commission's application of statutory requirements to the facts. We will treat the claims in order.

■ The plaintiffs claim that Steel Transporters is unfit to perform the proposed service. They base their claim on the fact that Steel Transporters leases virtually all of its trucks and equipment from its parent company and affiliate, Keep on Trucking Co., Inc., a California corporation. The plaintiffs cite to General Order 90 of the Commission, which provides:

The total number of lessor operated power units shall not exceed 25 percent of the number of power units owned by the authorized carrier, unless otherwise authorized by written application to the Commission and by the Commission's written exception to this rule.

As Steel Transporters points out in its brief, however, the concluding language of the same paragraph in General Order 90 specifies:

For the purpose of this section, the number of power units owned by an authorized carrier shall include those power units leased from rental companies without drivers.

Robert Bojanower, the president and owner of both the parent corporation and Steel Transporters, testified before the Commission that all of Keep on Trucking Co.'s equipment is available to Steel Transporters on an open exchange system, and that all of the drivers' salaries will be paid by Steel Transporters. Steel Transporters also offered extensive evidence regarding the past history, the current performance capacity, and the financial status of both corporations. In view of the substantial evidence tending to show the ability of Steel Transporters to perform the services described in the application, we will not substitute our judgment for that of the Commission on the subject of the applicant's fitness.

In their second claim of error, the plaintiffs challenge the Commission's finding that public convenience and necessity require the granting of the certificate in the present case. They argue that the testimony from the various shippers who supported the application failed to establish that existing services are inadequate. In the case of *PBI Freight Serv. v. Public Service Comm'n,* Utah, 598 P.2d 1352 (1979), this Court discussed at some length the policy considerations and standards which influence the Commission's decision-making process on the question of public convenience and necessity:

The Public Service Commission is charged with the duty of seeing that the public receives the most efficient and economical service possible. This requires consideration of all aspects of public interest, including the value of competition as well as the fact that existing carriers have a reasonable degree of protection in the operations they are maintaining. When a carrier applies for authority to institute a new carrying service, the Commission must take into account, not only the immediate advantage to some members of the public in increased service, and to the applicant seeking to enlarge the scope of its business, but must also plan long-range for the protection and conservation of carrier service so that there will be economic stability and continuity of service.

. . . .

The statutes of this state place the responsibility upon the Commission to determine whether a certificate of convenience and necessity should issue. This Court has stated its understanding of the statute to be that there should be a showing that existing services are in some measure inadequate, or that public need as to the potential of business is such that there is some reasonable basis in the evidence to believe that public convenience and necessity justify the additional proposed service.

This Court has repeatedly stated that "convenience" and "necessity" are not segregable and are not to be considered as separate terms, but must be construed together and constitute a joint concept, which must be construed and considered according to the whole concept and purpose of the act.

. . . .

The burden is upon the applicant for new carrier service to show, among other things, that public convenience and necessity would be served by the granting of its application. This means something more than showing the mere generality that some members of the public would like and on occasion use such type of transportation service. But it is not required that the facts found by the Commission be conclusively established, nor

even that they be shown by a preponderance of the evidence. If there is in the record competent evidence from which a reasonable mind could believe or conclude that a certain fact existed, a finding of such fact finds justification in the evidence, and this Court cannot disturb it.

*Id.* at 1354–55 (citations omitted).

■ The testimony in the record satisfies the statutory requisites in that it establishes that this is a case where the "public need as to the *potential* of business is such that there is some reasonable basis" for a finding of public convenience and necessity, and that "existing services are in some measure inadequate" in terms of specialized services and projected volume. *Lake Shore Motor Coach Lines, Inc. v. Bennett,* 8 Utah 2d 293, 297, 333 P.2d 1061, 1063 (1958) (emphasis added). Contrary to the thrust of plaintiffs' argument, neither the statute nor our past construction of its requires a showing of complete inadequacy on the part of existing services. In *Ashworth Transfer Co. v. PSC,* 2 Utah 2d 23, 268 P.2d 990 (1954), there was no testimony before the Commission by any shipper as to the need for increased common carrier service in Utah's oil fields. However, there was testimony from oil industry experts about the current and projected growth of the industry in Utah. This Court stated that such testimony was competent in a hearing to determine public convenience and necessity, and observed:

The "convenience" and "necessity" to be considered is [sic] that of the public and the statute does not require that the Commission find that the present facilities are entirely inadequate. It merely requires that the Commission "shall take into consideration ... the existing transportation facilities ...."

*Id.* at 30, 268 P.2d at 995 (citation omitted).

In the present case, Steel Transporters offered testimony before the Commission from seven companies operating in Utah and using the kind of services proposed in the application. One of those companies, Nucor Steel, had just opened, three weeks before the hearing, a new 90 million dollar "mini steel mill" in Utah, which was producing at the rate of an estimated 600,000 tons per year, 20% of which was projected for intrastate transport. Nucor's plans included a thirty percent expansion in the mill's capacity in about two years. Two other companies, customers of Nucor, testified about the projected increases in intrastate shipping needs because of Nucor's new Utah plant; one of them estimated the increase at approximately fifty percent of its current shipping volume. A fourth corporation, which stores and processes steel and other metal from the west coast for Utah distribution, testified about plans to expand its operations and about the specialized transportation services offered by the applicant which would give it an important competitive edge in its business. The remaining three corporations, a pipeline importer and two natural gas companies, established highly specialized needs in transportation services, including sophisticated tracking codes, loading services, and delivery schedules for their unique and expensive equipment. The testimony showed that Steel Transporters has an excellent record of service for these companies in other geographical areas, and also that none of the carriers currently existing in Utah are capable of providing these specialized services to the same extent. All of the representatives from these seven companies testified that they have had excellent experience with Steel Transporters in other locations, and that they are not currently using existing services to any large degree. For the most part, their needs for Steel Transporters' services were predicated on future volume of shipping due to changes in, and expansion of, their business in Utah.

■ In view of the foregoing evidence, we hold that the Commission did not act arbitrarily or capriciously in finding that public convenience and necessity require the granting of a certificate to Steel Transporters. The evidence showed both that existing services were "in some measure inadequate," at least as to future need, and that potential business was such as to justify the granting of the certificate.

**732**

The plaintiffs' third claim of error, that the Commission should have found that the granting of the certificate was detrimental to the best interests of the people of Utah, is determined by our preceding holding on the "public convenience and necessity" issue. The Commission properly found that public convenience and necessity require a granting of the application. Such a finding precludes the possibility that the granting of the application will be "detrimental to the best interests of the people of the state of Utah" within the meaning of the statute. The plaintiffs' argument appears to be that, because they are already serving many of the points included in the application, they are entitled to absolute protection from competition. Although protection of the economic health of the transportation industry is one well-recognized obligation of the Commission in its application of the statute, *see, e.g., Lake Shore Motor Coach Lines, Inc. v. Bennett, supra,* we have also recognized the "value of competition" in the serving of the public interest. *PBI Freight Serv. v. Public Serv. Comm'n of Utah, supra.* The plaintiffs have failed to make a persuasive showing that the health and vitality of the industry, or even their own businesses, would suffer by the granting of the application.

Plaintiffs' final point concerns an alleged error by the Commission in including six of the ten named counties in the certificate granted to Steel Transporters. They argue that there was no evidence specifying shipper needs within those six counties. Steel Transporters responds by pointing to the testimony in the record from all seven of its witnesses that they had a need for service to *all points* in the state of Utah. Several of the witnesses also testified as to a need for transportation to storage points from which additional service would be required directly to the consumer. There is competent evidence to support the Commission's factual determination on this point, and we will not overturn it.

The order of the Commission is affirmed. Costs to defendant Steel Transporters.

STEWART, OAKS and HOWE, JJ., concur.

HALL, C.J., does not participate herein.