SAVAGE INDUSTRIES, INC.,
Petitioner,

v.

UTAH STATE TAX
COMMISSION, Respondent.

No. 900248.

Supreme Court of Utah.

May 3, 1991.

R. Brent Jenkins, Dale R. Kent, Salt Lake City, for petitioner.

R. Paul Van Dam and Mark E. Wainwright, Salt Lake City, for respondent.

HALL, Chief Justice:

Savage Industries, Inc., seeks a writ of review of a final order of the Utah State Tax Commission ("the Commission") entered on April 20, 1990, which denied Savage Industries' petition for redetermination and upheld the finding of the auditing division that subsidiary corporations of Savage Industries were not entitled to carry over their own preacquisition losses in determining their annual income for preparation of the consolidated returns of Savage Industries.

The facts in the case have been stipulated to by the parties and are supplemented by findings of the Commission in its redetermination hearing. Prior to April 1, 1982, Kenneth Savage, T. Luke Savage, and Neal Savage owned the majority of the stock of fourteen different operating corporations. On April 1, 1982, a stock holding and management corporation, Savage Western Industries Corporation ("Savage Western"), was formed to consolidate the corporations into a manageable structure. On April 1, 1982, the stock of Savage Western was entirely owned by the three brothers and members of their families. On November 28, 1984, Savage Western underwent a statutory merger with Savage Industries, Inc., and Savage Western changed its name to Savage Industries, Inc. On December 31, 1986, shares of Savage Industries stock were transferred between the brothers to give each brother an equal percentage of ownership after the settlement of divorces.

Prior to April 1, 1982, the stock of KNT Leasing Corporation ("KNT") was owned by the brothers, with each owning 33⅓ percent of the stock. On April 1, 1982, Savage Western acquired 86.7 percent (2,600 shares) of the stock of KNT in exchange for its own stock. The remaining 13.3 percent (400 shares) was retained by Neal Savage pending divorce settlements. Prior to its acquisition by Savage Western, KNT filed separate Utah corporate franchise tax returns. In order to conform its tax year to that of Savage Western, KNT filed a separate corporate franchise tax return for the partial tax year June 1, 1981, to March 31, 1982. The return reported a current year's loss of $74,641 and reported $61,252 of prior years' losses as being available for carryover. On November 15, 1984, the name of KNT was changed to Savage Transportation Corporation. On January 15, 1985, the remaining 400 shares of Savage Transportation were acquired by

Savage Industries. On March 30, 1987, Savage Transportation was merged with Savage Industries.

Prior to April 1, 1983, the shares of Western Rock Products Corporation ("Western Rock") were owned by Kenneth Savage, T. Luke Savage, Charles Blackburn, and Eldon Reese. On April 1, 1983, Savage Western acquired the shares of Kenneth Savage and T. Luke Savage, for a total of 81 percent ownership of Western Rock. During the next two years, the shares owned by Blackburn and Reese were redeemed, giving Savage Western 100 percent ownership in Western Rock. For periods of time prior to the April 1, 1983 acquisition by Savage Western, Western Rock filed separate corporate franchise tax returns. In order to conform its tax year to that of Savage Western, Western Rock filed a separate corporate franchise tax return for the partial tax year January 1, 1983, to March 31, 1983. The return reported a current year's loss of $648,291. Western Rock's separate return loss was first carried back to prior Western Rock separate returns, where $359,685 (as determined by Commission adjustment) was applied to offset income, thus leaving $288,-606 of the loss available to be carried forward.

Starting with the fiscal year ending March 31, 1983, Savage Western, and later Savage Industries, joined with its subsidiaries in filing a Utah consolidated corporate franchise tax return.[1] In August of 1987, Savage Industries filed amended consolidated franchise tax returns for the years ended March 31, 1983, 1984, 1985, and 1986 to correct errors made on previously filed returns. In its amended consolidated return for the fiscal year ending March 31, 1983, Savage Western carried over $26,770 of KNT's separate return loss and applied it to offset KNT's income on the consolidated return. In its amended consolidated return for the fiscal year ending March 31, 1985, Savage Industries carried over $290,-

332 of Western Rock's separate return loss and applied it to offset Western Rock's income on the consolidated return. KNT's net operating loss was used to offset income generated by KNT. Western Rock's net operating loss was used to offset income generated by Western Rock. Neither net operating loss was used to offset the income of any other member of Savage Industries' consolidated group.

In November of 1987, the auditing division began examining these amended returns and, in an audit report dated February 2, 1988, disallowed carryovers of the losses on the consolidated returns. Savage Industries petitioned the auditing division for a reconsideration of its decision. On March 21, 1988, the auditing division responded to Savage Industries' petition and reiterated its position.

On April 5, 1988, Savage Industries filed a request for hearing before the Commission in order to orally present arguments prior to the Commission's rendering a final decision on its petition for redetermination. Oral argument was made before the Utah State Tax Commission on August 17, 1989. The Commission found in favor of the auditing division and against Savage Industries.

## I. STANDARD OF REVIEW

Our first task in this case is to determine the appropriate standard of review of the Commission's decision. The Commission's decision to deny Savage's petition for redetermination was based on its interpretation of Utah Code Ann. § 59-7-108. In its conclusions of law, the Commission stated that Savage's interpretation of this section was incorrect and that the plain language of the statute prohibited the deductions sought by Savage. The Commission's decision was therefore based purely on its construction and interpretation of the legislative enactment and is purely a question of law.

---

1. Utah Code Ann. § 59-7-124 prescribes the requirements for filing a consolidated corporate franchise tax return. The ability to file a consolidated return is described in the statute as a "privilege" of corporations with common stock ownership. There is no dispute that Savage Industries and its subsidiary corporations qualified to file consolidated returns under this section.

In determining the standard of review of agency decisions, the Utah courts have consistently followed three basic standards of review, which were set forth in the case of *Utah Department of Administrative Services v. Public Service Commission.*[2] In that case, Justice Oaks, writing for a unanimous court, held that review of administrative decisions fell into three distinct categories which required differing standards of judicial deference to be given to the agency's decision. First, agency determinations of basic fact were to be given great weight and would only be overturned if they were not supported by any evidence of substance whatsoever.[3] Second, agency determinations of general law, including interpretation of the state and federal constitutions and of acts of Congress and of the Utah Legislature, were to be reviewed giving no deference to the agency's decision, but re- viewing it for correctness.[4] Third, in between these two standards, agency decisions involving mixed questions of law and fact or the application of specific factual situations to the legislative enactments under which the agency operates were to be given deference by the courts and were to be upheld so long as they fell within the bounds of reasonableness and rationality.[5]

Subsequent to *Department of Administrative Services*, a large body of case law has evolved applying and refining the scope of the three standards.[6] Review of agency determinations of fact has remained consistent, with courts upholding agency findings of fact if they were based upon any evidence of substance.[7] Review of agency determinations of law, however, has been less clear under *Department of Administrative Services.*[8] This is especially so in

**2.** 658 P.2d 601 (Utah 1983).

**3.** *Id.* at 609.

**4.** *Id.* at 608.

**5.** *Id.* at 610.
The degree of deference extended to [agency decisions] on these intermediate types of issues has been given various expressions, but all are variations of the idea that the [agency] decisions must fall within the limits of reasonableness or rationality. As used in this context, the words "arbitrary and capricious" mean no more than this.
*Id.*

**6.** *See, e.g., Telecommunications v. Public Serv. Comm'n,* 747 P.2d 1029, 1030 (Utah 1987); *Taylor v. Industrial Comm'n of Utah,* 743 P.2d 1183, 1186 (Utah 1987); *True–Flo Mechanical Sys. v. Board of Review,* 743 P.2d 1161, 1163 (Utah 1987); *Spreader Specialists, Inc. v. Public Serv. Comm'n,* 738 P.2d 1043, 1044 (Utah 1987); *Smith v. Board of Review of Indus. Comm'n,* 714 P.2d 1154, 1155 (Utah 1986); *Big K Corp. v. Public Serv. Comm'n,* 689 P.2d 1349, 1353 (Utah 1984); *Barney v. Department of Employment Sec.,* 681 P.2d 1273, 1275 (Utah 1984); *Bennion v. Utah State Bd. of Oil, Gas & Mining,* 675 P.2d 1135, 1139 (Utah 1983); *Salt Lake City Corp. v. Confer,* 674 P.2d 632, 636 (Utah 1983); *Young & Sons v. Public Serv. Comm'n,* 672 P.2d 728, 729 (Utah 1983). The court of appeals has also decided several cases applying the three standards of review of agency determinations. *See, e.g., USX Corp. v. Industrial Comm'n,* 781 P.2d 883, 886 (Utah Ct.App.1989); *Olympus Oil Inc. v. Harrison,* 778 P.2d 1008, 1010 (Utah Ct.App. 1989); *Capital Gen. Corp. v. Department of Bus. Regulation,* 777 P.2d 494, 496 (Utah Ct.App.

1989), *cert. denied,* 781 P.2d 878 (1989); *Kline v. Utah Dep't of Health,* 776 P.2d 57, 60 (Utah Ct.App.1989); *Taylor v. Utah State Training School,* 775 P.2d 432, 433–34 (Utah Ct.App. 1989); *Boyd v. Department of Employment Sec.,* 773 P.2d 398, 400 (Utah Ct.App.1989); *Smith & Edwards v. Industrial Comm'n,* 770 P.2d 1016, 1017 (Utah Ct.App.1989); *Sisco Hilte v. Industrial Comm'n,* 766 P.2d 1089, 1091 (Utah Ct.App. 1988).

**7.** There has been a trend in recent case law to require factual findings of an agency to be based on substantial evidence. *See, e.g., Bennett v. Industrial Comm'n,* 726 P.2d 427, 429 (Utah 1986); *Big K Corp.,* 689 P.2d at 1353. This standard for reviewing agency findings of fact is incorporated into the Utah Administrative Procedure Act, effective January 1, 1988, and found at Utah Code Ann. § 63–46b–16(4)(g).

**8.** *Compare Bennett,* 726 P.2d at 429 (defining "employee" under Utah's workers' compensation statute) *with Johnson v. Department of Employment Sec.,* 782 P.2d 965, 968 (Utah Ct.App.1989) (defining "just cause" under Utah's unemployment statute). The distinction between these two cases can be clarified by looking at the organic statutes of the agencies involved. The statute giving the agency power to determine whether an employee has left employment for just cause for purposes of unemployment compensation gives the agency wide discretion based on "equity and good conscience." Utah Code Ann. § 35–4–5. The statute determining the scope of employment for workers' compensation benefits does not give the Industrial Commission such agency discretion. Utah Code Ann. § 35–1–43(1)(b).

cases distinguishing between agency decisions which were granted deference by the courts and those reviewed for correctness. Recent decisions of this court have addressed this distinction and have clarified which agency decisions are granted deferential review and which fit within the "general law" category, to be reviewed using a correction of error standard.

In *Hurley v. Board of Review of Industrial Commission,*[9] this court attempted to clarify the distinction between cases requiring deference to agency decisions and cases which would be reviewed using a correction of error standard. In distinguishing the two standards, we noted that agency decisions which are granted a more deferential review are often mixed questions of law and fact, which require application of specific technical fact situations to the statutes which an agency is empowered to administer. These are the types of decisions and applications in which the agency's special expertise puts it in a better position than an appellate court to evaluate the circumstances of the case in light of the agency mission. In contrast, decisions involving statutory interpretation, issues of basic legislative intent, or construction of ordinary terms in the organic statute of an agency involve areas in which an appellate court is as well suited to decide the legal questions as is the agency. In cases where the basic question is what does the law require? the standard is a correction of error standard.[10]

In *Chris & Dicks v. Tax Commission,*[11] we reiterated that correction of error is the basic standard of review of agency decisions of law. We stated:

> In the usual case, questions of statutory construction are matters of law for the courts, and we rely on a "correction of

error" standard of review, according no deference to the agency's interpretation. There are a limited number of circumstances where the agency's interpretation of a statute or rule may be entitled to some deference, as where construction of the statute should take into account the agency's expertise developed from its practical, firsthand experience with the subject matter.[12]

■ This language clarifies that the intermediate standard of review is only to be applied in areas of agency technical expertise or in areas where the legislature has specifically granted the agency discretion in its decision-making process. For most questions of basic statutory interpretation or construction of the law, the court is as suited to decide the issues involved as is the agency and therefore will review the agency decision for correctness.[13]

The instant case would clearly fit within the correction of error standard under *Chris & Dicks, Hurley,* and their predecessors. The Commission's decision was based upon its interpretation of ordinary statutory terms. Its interpretation was not based upon any technical expertise of the Commission nor upon application of a complex, technical fact situation to the statute. The Commission's decision was merely its interpretation of what the statute prohibits. The decision is therefore one which this court is as competent as the Commission to decide, and a correction of error standard would be appropriate under our prior case law.

Because Savage's petition for redetermination was filed after January 1, 1988, the Utah Administrative Procedure Act ("UAPA")[14] governs our review of the

---

9. 767 P.2d 524 (Utah 1988).

10. *See id.* at 528.

11. 791 P.2d 511 (Utah 1990).

12. *Id.* at 513–14 (citations omitted).

13. This standard has evolved through several Utah cases, beginning prior to *Department of Administrative Services. See, e.g., Salt Lake City Corp. v. Department of Employment Sec.,* 657 P.2d 1312, 1316 (Utah 1982); *Big K Corp.,* 689 P.2d at 1353 (applying a correction of error

standard "unless the Commission by virtue of expertise and experience with the regulatory scheme is in a superior position to give effect to the regulatory objectives to be achieved or the terms of the statute make clear that the Commission was intended to have broad discretion in construing those terms"); *Bennett,* 726 P.2d at 429.

14. Utah Code Ann. §§ 63–46b–1 through –22 (1989).

Commission's decision denying that petition. We therefore must inquire into what effect that act has upon the standard of review of the Commission's interpretation of law. In its 1987 legislative session, the Utah Legislature enacted the UAPA for the direction, governance, and review of all agency action within the state. Specifically, section 63–46b–16(4) governs appellate review of agency decisions made after a formal adjudicative hearing. Section 63–46b–16(4) states:

(4) The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

(a) the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied;

(b) the agency has acted beyond the jurisdiction conferred by any statute;

(c) the agency has not decided all of the issues requiring resolution;

(d) the agency has erroneously interpreted or applied the law;

(e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;

(f) the persons taking the agency action were illegally constituted as a decision-making body or were subject to disqualification;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute;

(ii) contrary to a rule of the agency;

(iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving facts and reasons that demonstrate a fair and rational basis for the inconsistency; or

(iv) otherwise arbitrary or capricious.

■ The Commission argues that the language of section 63–46b–16(4) requires us to give deference to agency decisions. This argument is based on the language in subsection (4) requiring that "substantial prejudice" be shown before a court may grant relief from agency action. The Commission's position is that this phrase implies that we should give deference to agency decisions and that we should uphold those decisions unless they are "substantially" incorrect.

The phrase "substantial prejudice" within subsection (4) refers to the "person seeking review." It does not modify the actual standards of review found within subsection (4). This means that the person seeking review of an agency action must suffer substantial prejudice as a result of that action before a court may grant relief from the action. This portion of subsection (4) relates to the damage or harm suffered by the person seeking review and was written to ensure that a court will not issue advisory opinions reviewing agency action when no true controversy has resulted from that action. The phrase simply does not relate to the degree of deference a court must give an agency decision.

In this case, Savage has been substantially prejudiced by the Commission's decision denying its petition for redetermination. Savage's subsidiaries have been denied the use of over $300,000 in tax deductions in the form of loss carryovers. Therefore, the substantial prejudice requirement of subsection (4) is clearly met.

■ Under section 63–46b–16(4)(d), a court may grant relief based upon an agency's erroneous interpretation of law. This incorporates the correction of error standard previously applied by the Utah courts in cases involving agency interpretations of law. This incorporation of the correction of error standard is confirmed by looking at the legislative history of the UAPA. The Utah Administrative Procedure Act was patterned after the Model State Administrative Procedure Act.[15] Section 63–

---

**15.** Comments of the Utah Administrative Law Advisory Committee, Utah A.P.A., at 15 (Code     Co Law Publishers, April 25, 1988).

46b–16(4) is in nearly all respects identical to the Model Act's section 5–116(c). Therefore, helpful information about the intended scope and application of Utah's Act can be obtained by resort to the comments and cases concerning the Model Act and its application in other states. In reviewing subsection 5–116(c)(4) of the Model Act (the equivalent of subsection 63–46b–16(4)(d) of Utah's Act), the commentators stated:

> Paragraph (c)(4) includes two distinct matters—interpretation and application of the law. With regard to the agency's interpretation to [sic] the law, courts generally give little deference to the agency, with the result that a court may decide that the agency has erroneously interpreted the law if the court merely disagrees with the agency's interpretation.[16]

This comment confirms that under the Model Act and therefore under the UAPA, an agency's interpretation of the law is to be reviewed using a correction of error standard. It is clear that the Commission's decision in this case is to be reviewed for correctness, giving no deference to the Commission's interpretation of the law. This approach is mandated whether arrived at under the terms of the UAPA or under the holdings of our prior case law. We will therefore review the Commission's decision concerning Savage's petition for redetermination using a correction-of-error standard.

## II. SECTION 59–7–108(14)(f).

Turning now to the merits of the case, the basic issue presented is the correct interpretation of Utah Code Ann. § 59–7–108(14)(f), which prohibits an acquiring corporation from using preacquisition losses of an acquired corporation. Utah Code Ann. § 59–7–108(14)(f) (1987) reads: "Corporations acquiring the assets or stock of another corporation may not deduct any net loss of the acquired corporation incurred prior to the date of acquisition."

■ The terms of a statute should be interpreted in accord with usually accepted meanings.[17] In construing legislative enactments, the reviewer assumes that each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable.[18]

■ The plain language of section 59–7–108(14)(f) is specific in its operation and intent. The section specifically prohibits the deduction of certain types of net loss carryovers, those incurred by an acquired corporation prior to the date of its acquisition. Section 59–7–108(14)(f) is also specific as to who is prohibited from deducting preacquisition loss carryovers. The section prohibits all "corporations acquiring the assets or stock of another corporation" from taking these deductions. All other corporations or entities are left outside the prohibitions of the statute. Therefore, by the plain terms of the statute, the acquired corporation is not prohibited from deducting its preacquisition losses merely because its stock has been purchased by another entity.[19] The acquired corporation does not fit within the statute's specific prohibitions and should be free to deduct the preacquisition losses from its own income.

■ The Commission argues that the filing of consolidated returns by petitioner somehow transforms the deductions by the acquired corporations into those of Savage Industries, the acquiring corporation. While the filing of a consolidated return does create a single taxing unit which includes both the acquiring and the acquired

---

**16.** Model State Admin. Procedure Act § 5–116 comment, 15 U.L.A. 127–30 (1981).

**17.** *Utah County v. Orem City,* 699 P.2d 707, 708 (Utah 1985).

**18.** *Amax Magnesium Corp. v. Tax Comm'n,* 796 P.2d 1256, 1258 (Utah 1990); *Horne v. Horne,* 737 P.2d 244, 247 (Utah Ct.App.1987).

**19.** This situation differs from instances where the acquired corporation is merged into the acquiring corporation. There, the surviving corporation is the "acquiring" corporation, and it appears that the deduction would be prohibited. *See generally Golf Digest/Tennis Inc. v. Dubno,* 203 Conn. 455, 525 A.2d 106, 110–11 (1987); *Fieldcrest Mills, Inc. v. Coble,* 290 N.C. 586, 227 S.E.2d 562, 574 (1976).

corporation, the form of the consolidated return does not change the deduction from one of the acquired corporation. The consolidated return is not merely the return of the acquiring or parent corporation. All deductions taken on the return should not therefore be considered to be the deductions of the parent corporation. The Commission's own regulations regarding preparation and filing of a consolidated return make it clear that the corporations filing such returns maintain their separate identities although a single tax is calculated for the group. Tax Commission regulation R865–6–4F(G) states that the parent corporation acts as the agent for the consolidated group. This provision does not state that the return is considered that of the parent; indeed, it mandates that the group must notify the Commission of its new agent if the parent is contemplating dissolution and is not qualified to file as part of the consolidated return. Regulation R865–6–4F(H) allows the Commission to pursue individually the subsidiaries that make up the group if the tax is filed improperly as separate returns. Therefore, it is clear that the return is filed for each member of the affiliated group and is not just that of the parent corporation.

The form of the return itself also makes distinctions between the parent corporation and its individual subsidiaries. Under R865–6–4F(J)(3), separate schedules for each corporate entity listing income and deductions must be filed with the consolidated return. It is on these separate schedules that the deductions at issue were taken by the acquired corporations. The deductions were only taken in years when the specific acquired corporations had sufficient income to offset the previous losses.[20] The deductions taken by KNT and Savage Western were the separate deductions of these acquired corporations. The fact that they were taken in years when the acquired corporations filed consolidated returns does not make them the deductions of Savage Industries, the acquiring corporation, and does not make the deductions violations of section 59–7–108.

■■■ The Commission argues that the allowance of deductions for preacquisition losses by an acquired corporation will violate the legislative intent of section 59–7–108. This court's primary responsibility in construing legislative enactments is to give effect to the legislature's underlying intent.[21] "In determining the legislative intent of a statute, 'the statute should be considered in the light of the purpose it was designed to serve and so applied as to carry out that purpose if it can be done consistent with its language.' "[22] The Commission cites no legislative record or other history to ascertain the intent of the legislature in drafting section 59–7–108. Therefore, in attempting to determine legislative intent, we should look first to the plain meaning of the language at issue in the statute.[23] The words of the statute indicate an intent to prevent buying of loss corporations by high profit corporations solely for the use of the loss corporation's previous loss carryover deductions. A further intent may be to limit the use of loss carryover deductions to those corporations which have previously suffered the losses and therefore are entitled to average their low income years with their high income

**20.** The prior net losses of Western Rock were not deducted until 1985, although they were incurred in 1983. This was because Western Rock itself did not generate sufficient income to offset these net losses until 1985. During the intervening years, however, Savage Industries had net income sufficient to offset these losses. The fact that Savage Industries did not seek to use these losses illustrates the proper application of this statute to the acquiring corporation.

**21.** *See Millett v. Clark Clinic Corp.,* 609 P.2d 934, 936 (Utah 1980); *Salt Lake City v. Salt Lake*

*County,* 568 P.2d 738, 741 (Utah 1977); *Utah Farm Bureau Ins. Co. v. Utah Ins. Guar. Ass'n,* 564 P.2d 751, 754 (Utah 1977).

**22.** *Utah Power & Light v. Municipal Power Sys.,* 784 P.2d 137, 141 (Utah 1989) (quoting *Johnson v. State Tax Comm'n,* 17 Utah 2d 337, 411 P.2d 831, 832 (1966)).

**23.** *Chris & Dick's Lumber v. Tax Comm'n,* 791 P.2d 511, 514 (Utah 1990); *Allisen v. American Legion Post No. 134,* 763 P.2d 806, 809 (Utah 1988).

years.[24]

Evaluation of the current case shows that the allowance of preacquisition losses by the acquired corporation does not violate this intent. Allowance of the deduction does not encourage high profit corporations to buy loss companies merely for the purpose of deducting loss carryovers, as the high profit company is required to turn around the loss corporation until it generates profit before any carryovers may be deducted. This type of turnaround of loss corporations is not the type of loss "manipulation" the legislature intended to prohibit by the statute. The secondary intent of the statute is also furthered by allowing acquired corporations to deduct loss carryovers. The subsidiary or entity which incurred the loss is the one that later is able to benefit from the carryover in averaging its income between high and low income years. No deduction may be taken by the acquired corporation or any affiliated group of which it is a member until that acquired corporation generates enough income to offset the loss carryover.

The Commission also urges that the deduction sought by Savage Industries should not be allowed because it will encourage corporations to manipulate assets between parent and subsidiaries to wrongfully take advantage of the net loss carryovers by the transfer of profitable operations to the companies with prior net losses. The simple response to this argument is that the statute must be enforced as it is written, and as written, it does not prevent that type of manipulation. Further, there is no evidence of misuse of assets or of the feared manipulation in this case. Savage Industries was formed to consolidate and manage existing corporations owned by the Savage brothers. The organization and corporate ownership of these corporations remained the same both before and after the formation of Savage Industries and the stock purchases by which KNT and Savage Western became Savage Industries subsidiaries. The entire thrust of these transactions appears to have been for organization and management purposes and not for tax manipulation.

Even the Commission's interpretation of the statute would not prevent manipulation of corporate assets for the purpose of accruing tax deductions based on preacquisition losses. A mere reversal of parent and subsidiary positions by corporations would allow the "parent" loss corporation to take advantage of its losses incurred prior to the purchase of the profitable "subsidiary." This type of manipulation, as well as that feared by the Commission under our interpretation of the statute, is not addressed in section 59–7–108 and is better dealt with through other means, such as careful Commission auditing of intercompany transfers. The interpretation of the statute to allow acquired corporations to deduct the prior net losses does not prevent alternate means for discovering improper manipulation of assets.

We therefore hold that the statute as written does not prohibit an acquired corporation from taking advantage of its loss carryovers incurred prior to the date of acquisition in order to offset its own as opposed to the acquiring corporation's income. The deduction may be taken by the acquired corporation, whether filing separately or filing a consolidated return as part of an affiliated group. The decision of the Commission denying Savage's petition is reversed, and the case is hereby remanded to the Commission for proceedings consistent with this opinion.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

---

**24.** *See Fieldcrest,* 227 S.E.2d at 565 (discussion of the purpose behind allowance of loss carryovers as deductions from corporate franchise tax).